T. Guilford Smith v. William F. Baker.

*Contract—Discharge of employé.*

Where a book-keeper, who is employed at a yearly salary, makes unauthorized overdrafts from his employer's money, of which he has the handling, the employer is authorized to discharge him before the end of the year, and demand repayment.

Error to Manistee.   (Judkins, J.)   Submitted on briefs April 27, 1894.   Decided June 16, 1894.

*Assumpsit.*   Defendant brings error.   Affirmed.   The facts are stated in the opinion.

*Dovel & Smith,* for appellant.

*McAlvay & Grant,* for plaintiff.

MONTGOMERY, J.    From 1882 to 1885, inclusive, the plaintiff was engaged in the lumbering business at Hungerford, Newaygo county, Mich.; and from 1882 to August, 1885, defendant was in his employ, as book-keeper, and kept his account in his own. handwriting.   The books showed an overdraft by defendant amounting to $708.13, which, with interest to the date of the trial, measured plaintiff's recovery below.   There was no dispute about the amount of overdraft, but the defense interposed by defendant was that he overdrew his account on the authority of Stewart Ives, who was manager of the plaintiff up to some time in the summer of 1885, when he was superseded by Mr. Mason.   The claim, as defendant states it, is:

"I was building a house at the time of the overdraft, and needed more money than I had, and had a talk with Mr. Ives about it.   He asked me how much I needed, and I told him from $400 to $600.   He said he would assist me; that I could overdraw my salary, and make it up as I went along; that it would probably be balanced at the end of the year,—if not, then soon after.   I told him I would need $500 or $600.   With that understanding, I drew the money."

Defendant does not claim that any agreement was made with Mr. Mason by which he could continue his overdrafts after Mr. Mason came there, and on cross-examination he testified:

"The amount of the overdraft was not limited.

" *Q.* Then there was no definite or particular agreement made between you and Mr. Ives?

" *A.* He said, 'If you want $500, or more or less, just as you like,—whatever you need to keep you going with your house and running expenses,—take it out of the business.'

" *Q.* What was the balance of the agreement that you were to take it out of the business?

" *A.* I was not supposed to draw much over $500,—from $500 to $700; anywhere along there, whatever there was. I didn't consider it necessary, if it took $700, to tell him I would have to have $700.

" *Q.* How was it after Mr. Mason came?

" *A.* I supposed my agreement with Mr. Ives would go along the same.

" *Q.* And you drew out $300 under that agreement? Isn't it a fact that the two items you drew out then were two items of salary?

" *A.* I drew that amount of money to use as I told you in the first place.

" *Q.* What was your agreement about paying it back?

" *A.* To balance it up as I went along."

As a matter of fact the overdraft was $708.13.

It does not appear that the authority to allow the money of the lumbering concern to be withdrawn by employés, in the way of loans, was within the scope of Mr. Ives' employment. The presumption would certainly be the other way. However this may be, it is apparent that there was no definite arrangement by which he permitted the defendant to overdraw any such sum as he did, and certainly none which continued after Mr. Ives was superseded by Mr. Mason. The defendant having the handling of plaintiff's money, and making these unauthorized overdrafts, the plaintiff was certainly authorized to discharge him, and to demand repayment.

The circuit judge very properly directed a verdict for the plaintiff, which is affirmed, with costs.

The other Justices concurred.