THE SARANAC AND LAKE PLACID RAILROAD COMPANY, Appellant, *v.* CHARLES E. ARNOLD and ALFRED J. VOYER, Respondents.

1. APPEAL — PRESUMPTION AS TO BOOKS OF CORPORATION RECEIVED IN EVIDENCE AND AS TO RIGHT TO RELY UPON FACTS SHOWN THEREBY. It will be assumed on appeal to the Court of Appeals that the books of a corporation were properly received in evidence against the former officers thereof, in an action against them by the corporation to recover money and property belonging to it alleged to have been received and retained by them for their individual benefit, and also that the plaintiff had a right to rely upon the facts shown thereby, when no appeal was taken by the defendants.

2. CORPORATIONS — LIABILITY OF OFFICERS FOR APPROPRIATION OF CORPORATE FUNDS. Officers of a corporation, by reason of ownership of substantially all of its stock, do not own the corporation itself, and if they convert its money or property to their own use the same liability attaches as if they had appropriated the money or property of an individual.

3. WITNESS — CREDIBILITY OF, WHEN A QUESTION OF FACT. Whether former officers of a corporation took money and property belonging to it, alleged to have been received and retained by them for their individual benefit, is a question for the jury in an action against them by the corporation to recover the amount thereof where the books apparently show that they did, and practically the only evidence to the contrary is their own testimony in denial and explanation, although it is unimpeached and

uncontradicted, and the direction of a verdict in their favor is reversible error, since they are interested witnesses whose testimony is uncorroborated and whose credibility is a question for the jury.

*Saranac & L. P. R. R. Co.* v. *Arnold*, 41 App. Div. 482, reversed.

(Argued April 23, 1901; decided June 4, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 27, 1899, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court at a Trial Term and an order denying a motion for a new trial.

This action was brought to recover from the defendants the sum of $23,321.69 upon the allegation that between the 23rd of June, 1893, and the 23rd of March, 1896, they collected, received, withheld and retained, for their individual benefit, money and property belonging to the plaintiff, worth that amount, and upon demand duly made refused to pay over the same or any part thereof. The defendants by their answers, after some formal admissions, denied the remaining allegations in the complaint.

The plaintiff is a domestic railroad corporation, organized in 1890, with a capital stock of $100,000, which in 1893 was increased to $250,000. From March, 1893, until March, 1896, the defendant Arnold was president, the defendant Voyer, treasurer, and both were directors. The railroad of the plaintiff, consisting of a single track, extends a distance of ten miles from Saranac Lake to Lake Placid. It was not built until the spring of 1893, and during the period of construction no one was beneficially interested in the stock except Mr. Arnold, and after it was built he and his co-defendant owned substantially all of the stock that had been issued. In March, 1896, the defendants sold a controlling interest in the stock, resigned their offices and delivered the books and papers to the new officers elected in their stead. In September following this action was commenced, and when tried in January 1899, resulted in an order made at the close of all the evidence, dismissing the complaint, although the plaintiff asked to go to

the jury upon several specific questions of fact. The Appellate Division affirmed the judgment entered accordingly and the plaintiff appealed to this court.

*Henry A. Forster* for appellant. The Appellate Division erred in affirming the dismissal of the complaint on the theory that because the defendants owned substantially all the stock of the corporation they alone were beneficially interested in the corporation, and they treated it as belonging to themselves. (*Buffalo L., T. & S. D. Co.* v. *Medina Gas & El. L. Co.*, 162 N. Y. 67; *De La Vergne Co.* v. *G. S. Inst.*, 175 U. S. 40; *Humphreys* v. *McKissock*, 140 U. S. 304; *England* v. *Dearborn*, 141 Mass. 590; 2 Cook on Corp. [4th ed.] §§ 664, 709; 1 Morawetz on Corp. [2d ed.] § 233.) The court erred in refusing to submit to the jury the question whether the defendants withdrew $3,110 in cash under cover of an entry of a fictitious payment of that amount. (*Latimer* v. *Veader*, 20 App. Div. 418; *Austin* v. *Daniels*, 4 Den. 299; *Hun* v. *Cary*, 82 N. Y. 66; *Holmes, B. & H.* v. *Willard*, 125 N. Y. 75; 1 Morawetz on Corp. [2d ed.] § 562.) The court erred in refusing to submit to the jury the question whether the defendants failed to turn over to the new officers of the plaintiff $2,925.75, the cash balance which the books showed was on hand at the time of their resignations. (*Flora* v. *Carbean*, 38 N. Y. 111; *Witmark* v. *N. Y. El. R. R. Co.*, 149 N. Y. 399.)

*John A. Straley* for A. J. Voyer, respondent. There remained at the close of the case no question for the jury to consider, and it would have been the gravest error on the part of the court not to have dismissed the complaint. (*Rudd* v. *Robinson*, 126 N. Y. 113; *Stokes* v. *Stokes*, 91 Hun, 605.) The court ruled properly in refusing to submit any question of fact to the jury. (*Lomer* v. *Meeker*, 25 N. Y. 361; *Appleby* v. *A. F. Ins. Co.*, 54 N. Y. 253; *Cagger* v. *Lansing*, 64 N. Y. 417; *Corning* v. *T. I. & N. Factory*, 44 N. Y. 577; *Neuendorff* v. *W. M. L. Ins. Co.*, 69 N. Y. 389.)

*Thomas M. Rowlette* for Charles E. Arnold, respondent. Before the books and documents of a corporation can be received in evidence in an action between the company and its trustees, or former trustees or officers, those books and papers must be proved in the same manner as if the action was between individuals, and the books and papers were the books and papers of one of the parties to the suit. (*Rudd* v. *Robinson,* 126 N. Y. 113; *Powell* v. *Conover,* 75 Hun, 11; *Stokes* v. *Stokes,* 91 Hun, 605; *Bank of the Metropolis* v. *Faber,* 38 App. Div. 159.)

Vann, J. The books of the plaintiff were received in evidence against both defendants, and as they did not appeal, their objections and exceptions are not before us. We must, therefore, assume, for the purpose of this appeal, that the books were properly received and that the plaintiff had a right to rely upon the facts shown thereby. (*Flora* v. *Carbean,* 38 N. Y. 111; *Witmark* v. *N. Y. El. R. R. Co.,* 149 N. Y. 393, 399.) The reason given for the rule in the earlier case cited is, that if the court upon the trial should exclude the evidence, the party offering it could, by his exception, have the ruling reviewed, and he would also have the opportunity to supply the defect by other proof.

We think that the books, supported by the testimony of the bookkeeper who kept them, and the experts who examined them, established a *prima facie* case against the defendants as to a part of the plaintiff's claim. There appeared upon the journal the following entry : " To cash, $3,110, for ties and poles purchased for the ' Union Electric Ry. Company.' " The bookkeeper testified that both of the defendants told him to make that entry in order to force a balance on the books, and that it was necessary for that purpose. He had no knowledge of any such transaction with the Union Electric Railway Company as was represented by the entry, and the only purpose for making it was that stated. The effect of the entry on the side of the cash account, where it was made, was to reduce the balance of cash on hand. This fictitious entry

was not explained except by the testimony of the defendants. themselves, without corroboration from any source.

When the defendants resigned and turned the books over to the new management the cash account on the ledger had not been balanced, but when balanced it called for cash on hand to the amount of $2,927.27, although the amount actually turned over to the new officers was but $1.52. The balance, amounting to $2,925.75, was not accounted for upon the books, and, therefore, was presumptively in the defendants' hands. They were unable to show specifically, by the books or otherwise, where this balance went, but they attempted to account for it and to meet the other claims of the plaintiff, apparently established against them by the books, by their own testimony, uncorroborated, except to a slight extent by the evidence of the bookkeeper. They testified, in substance, that this little railroad did a limited business, and in order to enable it to make money outside of its chartered powers, with the knowledge of the directors and with their implied approval, they bought telegraph poles with its money and for its benefit in the name of a third person; that the receipts from the sale of the poles were put upon the books as cash received from freight, but the amounts paid out for poles were put down in various ways so as to conceal the real purpose of the payment; that this was done in order to so cover up the irregular business that it could not be traced upon the books and to thus keep it from the knowledge of the railroad commissioners; that while they were unable to point out the entries upon the books which covered their disbursements in the purchase of poles, they were certain that the sums thus disbursed were in fact entered ; that they never appropriated any of the plaintiff's money or property to their own use; that they received no salary, and that their only profit was through the dividends declared and the appreciation in the value of their stock; that the freight earnings were at the rate of only four or five thousand dollars a year, although as entered upon the books they were at the rate of over $15,000 a year, the difference being money received from

the sale of poles. They gave other testimony of the same general character, but called no witness to corroborate their statements. Even the person in whose name the pole business was carried on was not produced.

The bookkeeper testified that the receipts supposed to have been derived from the sale of poles were entered on the books as cash received from freight "the same as if it was freight," and that the sums alleged to have been paid for poles were entered under different heads so as to conceal the real nature of the transaction ; that he knew nothing about any purchase or sale of poles, but made the entries in this way by the direction of the defendants, and that he was unable to point out the precise entries which embraced the sums received or paid out in the pole business.

During the progress of the trial the plaintiff stipulated that it did not attack "the pole transactions as *ultra vires*." The defendants testified that they also were unable, owing to the peculiar circumstances, to point out the items on the books showing that the money had been paid out as they claimed. According to the by-laws no money of the plaintiff could be drawn from the bank where its deposits were made except by checks signed by each defendant in his official capacity, and with one unimportant exception none was drawn out in any other way.

As the books were in the nature of admissions made by the defendants, the whole of the admission must be taken together by considering both sides of the account, but when thus taken in connection with all the evidence in the case, the amounts represented by the fictitious entry and the cash on hand as shown by balancing the books, were not accounted for except by the testimony of the defendants themselves. They were both interested witnesses, for the action is against them alone, and any recovery by the plaintiff must be paid by them. The general rule is that where a witness is interested in the question, although he is not impeached or contradicted, his credibility is a question for the jury and the court is not warranted in directing a verdict upon his testimony alone. (*Gilder-*

*sleeve* v. *Landon*, 73 N. Y. 609; *Kavanagh* v. *Wilson*, 70 N. Y. 177; *Elwood* v. *Western Union Tel. Co.*, 45 N. Y. 549; 29 Amer. & Eng. Encyclo. of Law [1st ed.], 774.) The same rule applies to the testimony of two witnesses, both equally interested and testifying to the same facts.

While the defendants owned substantially all the stock, they did not own the corporation itself. It was not their chattel, but was a distinct legal entity with the right to own property, and they could not appropriate its property to their own use, any more than any other agent or trustee can appropriate the property of his principal. (*Buffalo Loan, T. & S. D. Co.* v. *Medina Gas & El. L. Co.*, 162 N. Y. 67, 76.) Through their voting power they could manage and control its affairs, but only as trustees, and they were bound to observe the rule of *meum et tuum* and to be as true to the corporation as if they had sustained the same relation to an individual. Hence, if they took any of the plaintiff's money or property for themselves they are liable the same as if, under similar circumstances, they had taken the money or property of an individual. The books apparently show that they did, and while they say they did not, owing to their interest, their denial presents a question of fact. We think the case should have been submitted to the jury and that the trial court erred in deciding as a question of law that there was nothing for them to pass upon.

The judgment should be reversed and a new trial granted, with costs to abide the event.

BARTLETT, MARTIN, LANDON and CULLEN, JJ., concur; PARKER, Ch. J., and O'BRIEN, J., dissent.

Judgment reversed, etc.