THRONSON, Appellant, vs. UNIVERSAL MANUFACTURING COMPANY and others, Respondents.

*September 13—October 3, 1916.*

*Corporations: Unlawful issuance of stock: Invalidity: Right of purchaser to rescind: Public policy: Unlicensed foreign corporations.*

1. A sale by a corporation of its theretofore unissued corporate stock for less than par value, being prohibited by sec. 1753, Stats., and in violation of the public policy of the state, is void.

2. Both the purchaser and the corporation in such case are partici-
pants in an illegal transaction, and the former cannot have judi-
cial aid to secure a rescission of the transaction and restoration
of the consideration paid.

3. In view of sub. 10, sec. 1770b, Stats., subjecting foreign corpora-
tions to the same restrictions that are imposed upon domestic
corporations, the rules above stated are applicable to both.

4. The fact that a foreign corporation so unlawfully selling its stock
in this state has not been licensed to do business here does not
debar it from the benefit of the public policy of the state which
precludes a rescission of the sale at the suit of the purchaser,
and it is the duty of the courts to enforce such policy whether
invoked by a litigant or not.

APPEAL from a judgment of the circuit court for Racine
county: GEORGE CLEMENTSON, Judge.  *Affirmed.*

An equitable action to rescind the sale of 134 shares of the
corporate stock of defendant company on the ground of
fraud.  The claim of plaintiff, was that he was induced to
purchase stock of a corporation by false representations made
in its behalf, particularly, by defendant *Ernest H. Smieding*
as manager, paying for such stock $10,000.  Plaintiff sought
to avoid the sale and to recover back the sum paid.  The al-
leged grounds of fraud are, briefly, as follows:

February 2, 1914, *Ernest H. Smieding,* as general man-
ager and treasurer of defendant corporation, solicited plaint-
iff to purchase shares of its corporate stock, representing that
it was sole owner of letters patent covering automobile acces-
sories which it was manufacturing, and of the ground and
buildings in Racine, Wisconsin, where its manufacturing
business was being carried on, which was ample for all prob-
able needed additions to the plant; that its indebtedness to
banks did not exceed $6,000, and that one Carpenter, a
prominent business man of Racine, was owner of $40,000
par value of the stock.  Plaintiff requested a financial state-
ment, showing the condition of the corporation, which was de-
clined upon the ground that it would require shutting down
and taking an inventory, *Smieding* assuring plaintiff that

everything was all right and as he had stated; that the stock was well worth par; that the business was rapidly increasing and would soon pay good dividends; that a limited amount of the stock was being offered at $75 per share because of urgent needs of the company for more capital; that everything was O. K., the company in good condition, its assets greatly exceeding its liabilities, and that no reason existed why any one could not safely buy the stock at the price it was offered at. Defendant Fred W. Stillwell, in behalf of the corporation, assured plaintiff that no preferred stock had been issued and that the statements made by *Smieding* were correct.   Plaintiff paid $10,000 for 134 shares of the stock of the corporation, relying upon such representations being true, whereas they were false and known to be so by the person who made them. The corporation did not own any patents, nor its factory building and premises, nor any grounds adjoining.   The patents were owned by persons to whom the corporation was obligated to pay royalties.   The indebtedness of the corporation to banks exceeded $16,000.   Charles R. Carpenter held $35,000 preferred stock as owner or security for indebtedness and the corporate stock was in fact valueless.   The facts were fraudulently concealed from plaintiff as to the true condition of the corporation and that most of the stockholders had obtained their stock without paying anything therefor. He did not learn the truth as to the financial condition until August 20, 1914, nor of the fraudulent concealment until September 19, 1914.

The complaint stated other matters which, so far as necessary to appear here, are referred to in the findings.

There were answers putting in issue all the allegations of fraud.

Upon the evidence, the court decided the facts to be: (1) Defendant corporation was organized under the laws of the state of Michigan with a capital of $300,000, divided

into 3,000 shares of $100 each, 1,000 shares being common, and 2,000 shares preferred stock.    During the times mentioned in the pleadings, it was such foreign corporation, engaged in manufacturing automobile accessories in the city of Racine, Wisconsin, but was never licensed to engage in business in this state.    (2) Fred W. Stillwell was the secretary, and defendant *Smieding,* treasurer and general manager. (3) February 14, 1914, plaintiff purchased of the corporation, acting by said *Smieding,* sixty-six shares of its common stock, paying $5,000 cash therefor, and, shortly thereafter, so purchased sixty-eight shares more of such stock, paying a like agreed price therefor; but in property, so the corporation realized not more than $3,500 in money.    (4) Plaintiff so purchased the stock because he could obtain it for much less than par value, and because of general repute and statements of others than defendants that the corporation was becoming successful and its business increasing, and his desire to obtain a place for his son, and not by any misrepresentations or fraud of defendants.    (5) *Smieding* did not make any of the alleged misrepresentations.    What he did say was based, as plaintiff knew, upon expected future business and estimated profits, was said in good faith and as expressions of opinion, as plaintiff knew; he was neither misled nor induced thereby to purchase the stock.    (6) Upon acquiring the stock, plaintiff was made a director of the corporation and, April 16, 1914, was made president, which office he held until September 22, 1914, when he resigned.    When he was elected president, he knew the corporation was not authorized to do business in this state, and knew, or from circumstances brought to his attention ought to have known, the truth of all matters in respect to which false representations and fraud are claimed, yet elected to retain his position with the company until after the failure of the Merchants & Savings Bank of the city of Racine, September 17, 1914, to which the corpora-

tion was largely indebted, such event rendering probable, as he thought, failure to realize the anticipated profit from the stock.

From such facts the court concluded that plaintiff was not entitled to relief on the ground of the alleged false representations, and, in any event, was precluded from obtaining the relief sought by reason of his having purchased the stock at less than its par value and his subsequent conduct.

Plaintiff requested findings inconsistent with those made, which were refused.   Exceptions were duly filed to the findings which were inconsistent therewith.   Judgment was entered, as ordered, dismissing the complaint with costs.

For the appellant there was a brief by *Thompson, Myers & Kearney,* and oral argument by *Wm. D. Thompson.*

For the respondent *Smieding* there was a brief by *N. L. Baker & W. J. Zimmers,* and oral argument by *Mr. Baker.*

*Vilas H. Whaley,* for the respondent *Dwight,* trustee in bankruptcy of the *Universal Manufacturing Company.*

MARSHALL, J.   It is considered that appellant was properly denied relief, irrespective of whether the trial court reached the right conclusion in respect to whether he was induced to purchase the stock by false representations of material facts.

It is undisputed that appellant purchased original stock from the corporation and the certificate therefor was issued to him for less than par value.   Sec. 1753, Stats., provides as follows:

"No corporation shall issue any stock or certificate of stock except in consideration of money or of labor or property estimated at its true money value, actually received by it, equal to the par value thereof, . . . and all stocks . . . issued contrary to the provisions of law . . . shall be void."

Under such statute this court held in *Clarke v. Lincoln L. Co.* 59 Wis. 655, 18 N. W. 492, that a sale by a corporation of its corporate stock, as in this case, for less than par value,

being prohibited by law and in violation of the public policy of the state, is void and that the purchaser and seller are participants in an illegal transaction and, so, notwithstanding the illegality, judicial remedies are not available to the former to recover back the consideration paid. By the same reasoning with which that conclusion was reached, such a purchaser of stock is not entitled, under any circumstances, to judicial aid to secure a rescission of the transaction and restoration of the consideration he parted with. The courts will leave both parties where they have placed themselves.

True, the cited case dealt with a domestic corporation, but since language was used, referring to corporations in general, it does not seem that the decision can be restricted to domestic corporations in view of sub. 10, sec. 1770*b*, which is as follows:

"All foreign corporations and the officers and agents thereof doing business in this state, shall be subjected to all the liabilities and restrictions that are, or may be imposed upon corporations of like character, organized under the laws of this state, and shall have no other or greater powers."

That was adopted from the state of Illinois. The purpose of it was "to produce uniformity in the powers, liabilities, duties and restrictions of foreign and domestic corporations of like character and bring them all under the influence of the same law." *Stevens v. Pratt,* 101 Ill. 206; *Floyd v. Nat. L. & I. Co.* 49 W. Va. 327, 38 S. E. 653; *Farmers' L. & T. Co. v. Lake St. E. R. Co.* 173 Ill. 432, 51 N. E. 55; *Connolly v. Union S. P. Co.* 184 U. S. 540, 22 Sup. Ct. 421. So we are unable to see why *Clarke v. Lincoln L. Co.* 59 Wis. 655, 18 N. W. 492, does not apply here. It clearly does by the reasoning of the Illinois court which must be presumed to have been adopted by the legislature in adopting the statute of that state.

No more need be said in this case. If it was open for a decision on the merits, aside from the statutory condemnation, a different result might be reached; but we seem to be

precluded by the settled law from efficiently going into that subject.

We do not overlook the point made by appellant that respondents cannot properly have the benefit of the statutory prohibition because of noncompliance by the corporation with the law as regards becoming licensed to do business here. That might be true if the situation were not one where the public policy of the state is involved. In such a situation, it is the duty of the court to enforce such policy, irrespective of whether it is invoked by a litigant or not. *Pearson v. Kelly,* 122 Wis. 660, 100 N. W. 1064.

*By the Court.*—The judgment is affirmed.