GREEN BAY FISH COMPANY, Respondent, vs. JORGENSEN, Appellant.

SAME, Appellant, vs. SAME, Respondent.

*April 26—May 15, 1917.*

*Master and servant: Discharge of servant: Justification: Corporations: Conversion of moneys by treasurer: Authority of president to bring suit.*

1. A wilful conversion of corporate funds to his own use by the treasurer of a corporation who was also employed as its manager justified his discharge as a matter of law, especially where such misappropriation of the funds was contrary to the express direction of the president of the corporation. *Schumaker v. Heinemann,* 99 Wis. 251, distinguished.

2. The president of a corporation, who by the charter or by-laws is given control of every department of the company, has implied authority to commence an action in its name to recover moneys of the corporation which have been converted by its treasurer and manager to his own use.

APPEALS from a judgment of the municipal court of Brown county: CARLTON MERRILL, Acting Judge. *Modified on plaintiff's appeal; defendant takes nothing on his appeal.*

The appeal by plaintiff is from so much of a judgment of the municipal court as gives plaintiff less damages than it claims, by defendant from the judgment denying him relief.

The defendant was one of the original stockholders and directors of the plaintiff, a Wisconsin corporation organized in May, 1914. The defendant and one John Ketter, also a stockholder and director, both lived in Green Bay before and after the incorporation, and defendant as treasurer and manager of the company, and John Ketter as director and assistant manager, conducted the affairs of the company at its place of business in Green Bay. *Jorgensen* as such treasurer had authority to draw checks upon the company's account kept at Green Bay. The remaining stockholders, Benjamin Sachs and Meyer N. Finder, both of Chicago, Illinois, were directors and the said Sachs president of the company.

By the by-laws of the plaintiff the following were described as the duties of the president:

"The management of every department of the company shall be under his control. The several officers of the company shall be responsible to him for the proper and faithful discharge of their several duties and shall make such reports to him, touching the business of the company under their charge, as he may from time to time require."

At about the time of the incorporation *Jorgensen,* who had had many years' practical experience in the fish business, was by resolution of the board of directors employed under a written contract, to be executed by the company, as manager for five years from April, 1914, at a salary of $50 per week, and John Ketter, by a similar resolution, was employed as assistant manager for five years at $35 per week. The stock was equally divided between the Chicago and the Green Bay stockholders as follows: Sachs and Finder each fifteen shares, *Jorgensen* twenty shares, and Ketter ten shares, of a par value of $100 each.

At the time of the organization neither *Jorgensen* nor Ketter had sufficient cash to pay for all of their subscriptions. By the common understanding they were permitted to make payments thereon from time to time. At about the time of the organization it was proposed by the four to make a written agreement which in substance provided that the stock of all should be deposited with the Chicago Title & Trust Company of Chicago so that in case of differences arising between the parties such Title & Trust Company, its president, or some person selected by it, should act as arbiter between the parties or carry on the business. This agreement was signed by *Jorgensen* and Ketter, but never by Sachs and Finder. *Jorgensen,* however, knew of this failure on their part to sign at least a year before his discharge. The corporation from the beginning borrowed about $40,000 from the company in which Sachs was interested in Chicago and used the same in

the construction of buildings and the conduct of the business, and also owed about $10,000 to the bank at Green Bay for loans, together with other accounts, and was in May, 1916, with less assets than liabilities. The corporation continued with varying business success until the spring of 1916. In May, 1916, the president, Sachs, learned of substantial over-drafts by *Jorgensen,* among others a check to pay his life in-surance premium of $30.50, another for his personal use of $40, and a third to pay his taxes of $186.68, all drawn in April, and finally that he drew out practically all the cash on hand, and, as found by the court, converted the same to his own use to an amount of $1,601.97 by a check on May 8th, and thereupon Sachs discharged defendant.

From defendant's own testimony it appears that at the time this money was drawn out he knew that the corporation was practically insolvent and owed large sums of money that it had borrowed, that he had no authority to withdraw the sum, and that it was without the consent of the president and over his specific objection to any such overdraft. It also appeared that *Jorgensen* had permitted Ketter to over-draw his account so that at this time Ketter's overdraft prac-tically equaled the amount he had theretofore paid for his stock, namely, $1,000. Ketter thereupon resigned and sur-rendered his stock.

The defendant claimed that he was authorized to with-draw this money for the purpose of protecting what he thought were his rights against the plaintiff in the belief that the $2,000 worth of stock to which he subscribed had not been issued to him and was withheld and that the Chicago directors had not treated him fairly in that the contract with reference to the depositing of the stock in escrow with the Chicago Title & Trust Company of Chicago had not been signed by them or its provisions carried out. Although the jury found to the contrary, yet the defendant admitted on the trial that before the commencement of the action demand

had been made upon him for the return of the money and that he had refused to do so.

The plaintiff sued defendant, *Jorgensen,* alleging the conversion of the $1,601.97.    The defendant counterclaimed for $2,000 which he claimed was due him because he had paid for the stock and had not received the same; also for $5,000 damages on the claim that his contract of five years from May, 1914, had been terminated by the plaintiff without cause and that he was entitled to damages therefor.    Defendant withdrew his counterclaim for the $2,000, it appearing upon the trial that the stock had been sent him and sent back by him to Chicago.

By a special verdict it was found substantially as follows: First, as answered by the court, that the defendant on May 8, 1916, took into his possession $1,601.97 of money, the property of the plaintiff, and converted the same to his own use before the commencement of the action.    That before it discharged the defendant the plaintiff demanded that he return this sum; and by a further answer that the defendant did not refuse to return this money; by the fourth question that the defendant as general manager and employee breached his duty as such to the plaintiff; and then by the fifth question that such breach did not constitute justifiable grounds for his discharge.    By the sixth question the jury found that the defendant's damages by reason of such discharge were $2,500.    This answer was modified by the court, under his view of the rule of damages, to the sum of $850.    The jury by the seventh question found that the bringing of the action by the president was not ratified by the plaintiff corporation. This answer was changed by the court to the affirmative.

After motions by the respective parties the court rendered judgment upon the corrected verdict for the difference between $1,601.97 with interest from May 8, 1916, and the sum of $850, the amount that was the agreed wage from the date of the discharge to the time of trial, making $792.82 as

plaintiff's damages and costs and disbursements.    The plaintiff appeals, claiming that it should have judgment for the entire amount found by the court to have been converted by the defendant.    The defendant appeals, claiming that he should have allowed the $2,500 damages found for him by the jury; and also that the court was not justified in finding that the action had been properly started cn behalf of the plaintiff corporation.

For the plaintiff there were briefs by *Kittell, Jaseph & Redfield* of Green Bay, and oral argument by *John A. Kittell.*

For the defendant there were briefs by *Martin, Martin & Martin* and *Sheridan, Evans & Merrill,* all of Green Bay, and oral argument by *William L. Evans.*

EschWEILER, J.    The important question here is whether or not the court below should have permitted the jury's finding that the conduct of defendant was not sufficient to warrant his discharge to control in the determination of this case.

We think that under the facts herein as stated the court should have held as a matter of law that the discharge of defendant was justified because he breached his duty.    The facts here much more than meet the requirements laid down in the case of *Green v. Somers,* 163 Wis. 96, 157 N. W. 529, namely, that where there is wilful and contumacious refusal by the servant to obey the lawful and reasonable commands of the master there is a breach of duty justifying the discharge.    This case of *Green v. Somers* evidently was not called to the attention of the trial court in disposing of this matter, and in his decision he laid much weight upon the case. of *Schumaker v. Heinemann,* 99 Wis. 251, 74 N. W. 785, as requiring a jury's determination upon the question of whether or not such conduct justified a discharge.    This earlier case does not meet or control the situation here.

The defendant as treasurer and director had control of the

funds of the corporation for its benefit and in trust for it, not for himself or any other officer or employee.    As between defendant and plaintiff the funds were impressed with a trust which he could not evade or avoid.    *Boyd v. Mut. F. Asso.* 116 Wis. 155, 172, 90 N. W. 1086, 94 N. W. 171; *Saranac & L. P. R. Co. v. Arnold,* 167 N. Y. 368, 60 N. E. 647; *Smith v. Baker,* 101 Mich. 155, 59 N. W. 394; *Miller v. Jones* (Iowa) 159 N. W. 671.

It requires no lengthy dissertation to demonstrate as a legal and ethical proposition that where, as here, upon the undisputed facts and the verdict of the jury it appears that an officer or servant, against the express direction of his superior officer or master, converts to his own use funds of the master, he has so breached the duties that he owes to his employer that his discharge is justified.    Even were the element of express direction to abstain from such use of corporate funds lacking, still a wilful conversion by a servant of his master's funds would justify his discharge.

The court below, therefore, should have granted plaintiff's motion at the close of the trial for judgment in its favor for the amount shown to have been converted by defendant, that is, the $1,601.97.    This would of necessity dismiss the defendant's counterclaim for any alleged breach of contract by such discharge.

There is no need that express authority to commence such an action should be given by the board of directors to a president who is clothed by the charter or by-laws of the corporation with the management of every department of the company.    Such authority may well be implied in the president of a corporation, especially under the circumstances of this case, where one who is a director and treasurer of the company must be sued and that one other of the four directors had himself overdrawn his account and had resigned as such director, as Ketter did.    It would be an idle formality to insist that the board of directors should be convened to do by

formal resolution that which would be and ought to be so evidently within the power of the head of such a corporation. 2 Thomp. Corp. (2d ed.) § 1433; *Trustees of Smith Charities v. Connolly,* 157 Mass. 272, 31 N. E. 1058; 10 Cyc. 904. Where, as here, such proceedings by the president were subsequently ratified at a meeting of the board of directors, the right to conduct and carry on such a suit by the direction of the president is beyond all question.

*By the Court.*—On plaintiff's appeal the judgment is modified by awarding plaintiff the sum of $1,601.97, together with interest from May 8, 1916, together with its costs and disbursements. Defendant takes nothing by his appeal.