STATE EX REL. STANDARD OIL COMPANY, Appellant, vs. HULL, Secretary of State, Respondent.

*November 11—December 3, 1918.*

*Mandamus: Motion to quash: Appealable orders: Foreign corporations: Annual reports: Fees: Statute construed: "Capital stock."*

1. A motion to quash an alternative writ of *mandamus* is in substance a demurrer raising the question of sufficiency of the facts stated in the petition and alternative writ, and the order granting or denying such motion is appealable.
2. The words "capital stock," as used in sub. 7 (e) of sec. 1770*b,* Stats., mean the stock actually issued and paid for, not the authorized capital stock of the corporation.

APPEAL ·from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The petition for the writ of *mandamus* herein recites that the relator and appellant is a foreign corporation organized by the laws of the state of Indiana; that its charter fixes its capital stock at $100,000,000, and that $30,000,000 thereof and no more has been paid for and issued; that for many years prior hereto it has been transacting business as such foreign corporation in the state of Wisconsin and has been licensed by this state so to do; that it has for a number of years past filed an annual report with the secretary of state and received a license to transact business within the state; that in February, 1918, it executed and filed with the secretary of state its annual report and supplemental annual report for the year 1917, under the provisions of sec. 1770b of the Wisconsin Statutes, and paid the $2 fee for such filing; that during the year 1917 it owned property within the state of Wisconsin amounting to $4,873,064.79, and transacted business to the amount of $11,713,506.41 in this state; that the true value of all its property, both within and without the state of Wisconsin, during the same year was $126,934,-717.01, and that the total amount of business transacted in the same year both within and without the state of Wisconsin was $169,548,451.22; that it employed during the year 1917 a smaller proportion of its capital stock within the state of Wisconsin than it did so employ during the preceding year; that the defendant, as secretary of state, refused to file such annual reports and threatens to annul the license of plaintiff to transact business within the state on the ground that, as a condition precedent to the filing of said report, the plaintiff must pay a fee therefor based upon the proportion represented by its property and business within the state of Wisconsin of the total amount of authorized capital stock of $100,000,000 instead of the same proportion upon the issued stock of $30,000,000 aforesaid.

The defendant moved to quash the alternative writ of *mandamus* for the reason that neither the petition for nor

said alternative writ states facts showing the petitioner entitled to a writ of *mandamus* as prayed. From the order quashing the writ the petitioner appeals.

For the appellant there was a brief by *Quarles, Spence & Quarles* of Milwaukee, attorneys, and *C. W. Martyn* of Chicago and *J. V. Quarles,* of counsel, and oral argument by *Mr. Martyn* and *Mr. W. C. Quarles.*

For the respondent there was a brief by the *Attorney General* and *Walter H. Bender,* deputy attorney general, and oral argument by *Mr. Bender.*

ESCHWEILER, J.  Although this purports to be an appeal from an order quashing an alternative writ and not from a judgment, nevertheless, the motion to quash being in substance and form a demurrer raising the question of sufficiency of the facts alleged in the petition and alternative writ, it is properly here before us on appeal for the reasons stated in the case of *State ex rel. South Range v. Tax Comm., ante,* p. 253, 169 N. W. 555.

The only question involved on this appeal is as to the definition that shall be adopted and enforced of the words "capital stock" used in sub. 7 (e), sec. 1770*b,* Stats., in determining the amount of the license fee to be paid by petitioner under that statute.

This law (sub. 7, sec. 1770*b*) provides for the filing with the secretary of state of an annual report sworn to by the president, secretary, treasurer, or general manager of the corporation which shall state as follows:

"(a) The name of such corporation and the location of its principal office or place of business without this state, and its place of business or principal office within this state, if maintained.   ·   ·   · ;  ·

"(b) The names and addresses of the officers of said corporation, and the name and address of the agent or manager who may represent said corporation in this state.

"(c) The nature of the business transacted in this state during the year preceding.

"(d) The amount of capital stock paid in money, property or services.

"(e) The proportion of the capital stock represented in the state of Wisconsin by its property located and business transacted therein during the preceding year."

And then follows immediately thereafter the provision containing the words necessary to be defined in this proceeding and reading as follows:

"In determining the proportion of capital stock employed in the state, the same shall be computed by taking the gross business in dollars of the corporation in the state and add the same to the full value in dollars of the property of the corporation located in the state. The sum so obtained shall be the numerator of a fraction of which the denominator shall consist of the total gross business in dollars of the corporation, both within and without the state, added to the full value in dollars of the entire property of the corporation, both within and without the state. The fraction so obtained shall represent the proportion of the capital stock represented within the state. The secretary of state may demand, as a condition precedent to the filing of such report, such further figures, information and statements as he may deem proper in order to determine the accuracy of the reports submitted; the additional information so obtained shall not become a matter of record in the department of state. The corporation shall pay a fee of two dollars for filing such report. In case said reports show that said corporation employs in this state a proportion of its capital stock in excess of twenty-five thousand dollars, said corporation shall pay to the secretary of state, at the time of the filing of said report, an additional fee of one dollar for each one thousand dollars of such excess, except that said corporation shall receive a credit for the proportion of its capital stock already paid for in excess of twenty-five thousand dollars."

The defendant contends that this term "capital stock" in said sub. 7 (e) means the petitioner's authorized stock of $100,000,000; the petitioner, that it means the $30,000,000 of stock paid for and issued.

The substantial difference between the two views is this: the defendant contends for a definition which, by including

the $70,000,000 of unissued stock, would thereby include the potential or possible future value, that which is not yet and possibly never will be stock, at least so far as stockholders are concerned; the petitioner's definition would confine the term to that which is already created, is already stock both as to stockholders and the corporation. The distinction between the issued and that which is merely within the power of the corporation under its charter to subsequently issue, if it so elects, is well expressed by the following language from the case of *U. S. R. Corp. v. State,* 208 N. Y. 144, 149, 101 N. E. 783:

"The statement in the certificate of incorporation or charter of the corporation that the capital stock is a designated amount divided into a certain number of shares, each of a named value, creates neither shares nor capital stock. It expresses the power of the corporation to acquire a capital stock. It creates potential shares which, transferred into actual shares by the acquisition of members and their payments, produce the money or property which, put into a single corporate fund, is the actual capital or capital stock on which the corporate business is undertaken and in which are the shares."

That the legislature meant in sub. 7 (e), sec. 1770*b*, above quoted, by the term "capital stock" the actual and therefore the issued and paid-for stock, and not the potential or merely embryonic, is, we think, quite apparent from an examination of the statute involved and kindred statutes.

Sub. 7 (d) of this same section, above quoted, requires the foreign corporation to state "the amount of capital stock paid in money, property or services." Applied to this case, the $30,000,000 of issued capital stock is that which would be the proper answer to the requirements of this sub. 7 (d). The $100,000,000 of authorized capital stock would not be.

The same must be said as to the language appearing in sub. 3 of the same statute, regulating the provisions for obtaining the first license to do business in this state by a foreign corporation.

Unless the requirement of sub. 7 (d) of the amount of paid-up capital stock is for use in the formula given in the following sub. 7 (e), above quoted, for the determination of the amount of license fee, it would seem to be rather an idle ceremony.

It can hardly be presumed, as is suggested by defendant, that this clause is only for the purpose of affording an opportunity to creditors or those interested of readily obtaining the information therein contained, for that object could be more naturally and reasonably attained by slightly amending, if necessary, sec. 1770a, Stats., which has been the law, substantially in its present form, since 1883, requiring every foreign corporation actually engaged in manufacturing in this state, upon written demand, to give just such information upon penalty of forfeiture of the right to do business herein.

On the other hand, when domestic corporations are required, under sec. 1774a, Stats., to file their annual reports with defendant, they are expressly required to certify as to both kinds of capital stock by the following subdivisions of sec. 1774a, viz.: "(3) The amount of authorized capital stock. (4) The amount of capital stock actually paid in money, property and services." It is especially significant that the requirement as to the amount of authorized capital stock is omitted as to foreign corporations, when it is seen that secs. 1770b and 1774a were put into substantially their present form by chs. 506 and 507, Laws 1905, respectively, and approved the same day, after having gone through the legislature side by side. Where there is such evident intentional omission to refer to authorized capital stock in the section before us, we do not see any warrant for reading it in by implication or construction.

The issued and paid-for stock of petitioner also meets the requirements of sec. 1753, Stats., providing that no corporation shall issue any stock or certificate of stock except in consideration of money or labor or property estimated at its

true money value, actually received by it, equal to the par value thereof, etc., and which said section also contains the further provision that all stock issued contrary to the provisions of law and all fictitious increase of the capital stock of any corporation shall be void.

In *Thronson v. Universal M. Co.* 164 Wis. 44, 159 N. W. 575, the plaintiff there was denied relief upon a contract involving the issue of capital stock of a foreign corporation for less than its par value, and therefore in violation of the public policy of this state as declared by said sec. 1753; it being held that upon such tainted stock there could be no rights predicated. We feel, therefore, that in construing the term involved here we should favor a definition of it that includes only that which has been clearly defined as legally issued stock by statute and decision, rather than a definition which would go beyond that.

Furthermore, it is evident that the legislature refers to actualities rather than potentialities in fixing the basis for computation of the license fee. All the other elements going into the statutory mathematical computation are actualities. The numerator of the fraction therein provided is the sum of the gross business in dollars of the corporation in the state and the full value in dollars of its property located in the state; the denominator is the sum of the total gross business in dollars of the corporation, both within and without the state, and the full value in dollars of the entire property of the corporation, both within and without the state.

We are also satisfied that the words "capital stock" as here used cannot be meant in the same sense in which they are defined in some decisions as the measure of the assets or property of the corporation, because by this same sub. 7 (e) it is provided that the full value in dollars of the entire property of the corporation, both within and without the state of Wisconsin, shall be used in the computation. The statute therefore provides its own express and different measure of the corporation property.

This disposition of the case upon the statutes themselves makes it unnecessary to determine whether or not the construction contended for by the learned attorney general in this case would be in conflict with the views expressed by the United States supreme court in holding that the Massachusetts statute exacting, as a privilege for conducting local business in that state, a tax upon the par value of the entire authorized capital, was an unlawful restraint upon property involved in interstate commerce and on property of a foreign corporation located and used beyond the jurisdiction of the state, and therefore void. *International P. Co. v. Massachusetts,* 246 U. S. 135, 145, 38 Sup. Ct. 292.

It follows from what has been said that the trial court adopted the wrong view in his construction of the statute before us, and the petitioner was entitled, under the facts shown in its petition, to have the license issued.

*By the Court.*—Order reversed, and the cause remanded for further proceedings, without costs, except clerk's fees to be paid by the appellant.

# CASES DETERMINED

AT THE

# January Term, 1919.