L. J. MUELLER FURNACE COMPANY, Respondent, vs. HOLMES, Appellant.

*November 18—December 13, 1921.*

*Master and servant: Discharge: Justification: Employee declining to obey proper orders: Corporations: Issue of stock: Validity: Consideration.*

1. Defendant, under contract for a fixed period as superintendent of plaintiff, a manufacturer of furnaces, stated to the general manager that he had conceived an idea as to a smokeless furnace and was requested from time to time to put the idea into concrete form. He finally declined on the ground that the requested service could not be brought to a successful termination within the remaining period of his employment, and when plaintiff refused to promise additional compensation for work to be done after such period defendant left plaintiff's service. *Held,* that if the conversation be considered as a discharge it was justified, and if it be deemed a reason or excuse for defendant ceasing to render service it was insufficient.

2. A corporation could not lawfully issue stock to an employee without consideration, no change being made in the contract of employment, and stock so issued is void.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Affirmed.*

For a long time prior to 1906 and thereafter the plaintiff was a corporation extensively engaged in business in Milwaukee and its stock was practically all owned by Mr. L. J. Mueller, Sr., and members of his family. In 1906 the same individuals organized the Manufacturers Foundry Company (hereinafter designated as M. F. Co.). In October, 1906, such M. F. Co. made a written contract with defendant by which he was employed as foreman in that company's foundry, commencing December 1, 1906, at a then salary of $1,800 per year. This was subsequently increased to $2,500 and thereafter to $3,000. The business of the M. F. Co. was for a number of years not profitable, but in 1914 it realized large profits. In that year, at de-

fendant's suggestion, an agreement was made that he should have, in addition to his salary during the following year and as a bonus, twenty-five per cent. of any profits made in excess of $40,000 during that year. Large profits were made and his share thereof was over $6,000, part of which was paid to him by canceling a note for moneys theretofore borrowed by him and the rest of which he received. Such agreement for a bonus was not renewed. In January, 1916, the M. F. Co., by resolution of its stockholders and directors at a meeting where defendant was present as stockholder, director, and officer, determined to dispose of all of its property to the plaintiff, such company to assume all the liabilities of the M. F. Co., and that the stockholders of the M. F. Co. were furthermore to surrender all their stock in such corporation and that subsequent proceedings be taken to legally dissolve that corporation. A formal resolution to dissolve the M. F. Co. was made a matter of record in the minutes of that company signed by the defendant as vice-president on February 23d. Thereafter defendant continued to work for plaintiff with no change in the nature of his services, and thereafter, as before, he was under the immediate direction of Mr. L. J. Mueller, Jr.

In July, 1916, defendant executed a promissory note to the plaintiff for $500 payable August 31, 1916. At about the same time a contract was made between the plaintiff here and the defendant wherein the defendant was to remain as foreman or superintendent at a salary of $500 per month until the 1st of July, 1917. Subsequently this period was extended to August 1, 1917. Defendant's intention to go into business for himself had been communicated to the plaintiff company in about June, 1916, and arrangements were made to meet that situation by the then employment of a new foreman or superintendent who was ultimately to take over defendant's work and his work was thereafter shared to some extent with such new superintendent, defendant giving his time more particularly to looking after the

construction of a new plant which was then in process of erection by plaintiff.

Plaintiff had been for some time interested in the subject of the possibility of devising or constructing what was considered of great value in the business in which it was engaged, namely, a smokeless boiler. One Fancher had devoted considerable time at plaintiff's plant on the planning or inventing of some such device, but no substantial result was obtained. At the instigation of Mr. L. J. Mueller, Jr., defendant, who had expressed considerable interest in the same subject and had also worked with Mr. Fancher, in October, 1916, went to St. Louis with Mr. Mueller to examine a device there installed. Castings were shipped to plaintiff's plant at Milwaukee and work done by defendant on them, but they were found unsuitable. About the same time defendant suggested to Mr. Mueller that he had an idea that he thought might be developed into an invention or device for such desired smokeless boiler and he was from time to time thereafter requested by Mr. Mueller to embody such idea in a sketch or drawing.

Defendant devoted considerable time outside of the usual hours of employment in plaintiff's business, and no question is raised but that he rendered faithful and valuable services to it during the period of his employment.

As the time approached in which defendant was to leave, Mr. Mueller became more insistent about something being done in this matter. It finally culminated on July 26th in a conversation between the two, in which Mr. Mueller insisted that something should be done by defendant in the form of plans or drawings embodying his idea of a smokeless boiler, or in default thereof defendant should leave, defendant insisting that what was then being requested of him by Mr. Mueller was impossible to be done during the period then remaining of his employment, and suggesting, in effect, that if his work in that connection should run over the period of his employment he should expect additional compensation

Mr. Mueller refused to accept any obligation so far as additional compensation was concerned. As a result of the situation thus presented the defendant left plaintiff's employment on the same day and rendered no further services.

Thereafter plaintiff commenced an action for a balance claimed to be due on the $500 note of defendant to it in 1916 above mentioned. Defendant denied liability on the ground that it had been agreed between the parties that defendant should be permitted to pay said note in full by his services during the month of July, 1917, and that by being discharged from such service by the plaintiff by virtue of what took place on the 26th between Mr. Mueller and himself, he had been unlawfully discharged and thereby prevented from so paying said note, and that being ready and willing to continue in such employment his services for such month of July would be full payment of said note.

*Defendant's counterclaim:* As to this, defendant alleged that as part compensation for defendant's services as vice-president of the M. F. Co. the directors of that corporation prior to March 1, 1910, duly authorized the transfer of fifty shares of the full-paid capital stock of said corporation, of the par value of $100 a share, to defendant; that such shares were duly transferred upon the books and became the defendant's personal property. That about February 1, 1916, such M. F. Co. was dissolved, the plaintiff company taking over all its assets and assuming all of its liabilities. That defendant never received any share in the distribution of the assets of said M. F. Co. and no consideration for his stock or interest in the assets of said M. F. Co., and that plaintiff is indebted to defendant in the sum of $1,883.50, the market value of said stock on January 29, 1916. For such amount, with interest, defendant demanded judgment.

The plaintiff's reply alleged the subscription by defendant for one share of the capital stock of the M. F. Co. and his agreement to pay the par value thereof; that by resolution in 1908 the board of directors of said M. F. Co. authorized

additional subscriptions to its capital stock, and that the defendant thereupon subscribed for forty-nine shares and agreed to pay the sum of $4,900, and that it was understood and agreed that payment for such stock could also be made by the application of dividends declared in favor of the same. That defendant never paid any money for said stock and that no dividends were declared upon it, and then recited the carrying out of the resolution above specified as to the dissolution of said M. F. Co. and the turning over of its assets to and assuming the obligations of the said M. F. Co. by the plaintiff and that such was done by unanimous vote of all the stockholders of the said M. F. Co., including the defendant, and that the stock was surrendered and canceled and that there is nothing due defendant on account of such note.

The minute books of the M. F. Co. were received in evidence and show the various proceedings substantially as above recited. No payment was made or offered by defendant on account of such subscription or demand for any such payment by the M. F. Co. and no dividends declared by that company.

On January 29, 1916, Mr. Mueller gave to defendant, at his request, a memorandum reading as follows: "Value of *Holmes* stock with interest $1,883.50 (deficit $3,116.50)."

These figures, as appears from the evidence, were taken from a memorandum furnished by accountants who at about that time examined the books of the M. F. Co.

There was further testimony by Mr. Schlueter, plaintiff's purchasing agent and who kept the confidential books or records of the plaintiff and was familiar with its affairs and those of the M. F. Co., that at the time of the turning over of said corporation to the plaintiff there was no value to its capital stock and that its liabilities were about $70,000 in excess of the assets.

Upon the trial of this action in the civil court before a jury the jury answered "Yes" to the following question in a special verdict: "Under all the facts and circumstances sur-

rounding the parties on the 26th day of July, 1917, was the request by the plaintiff, through L. J. Mueller, Jr., of the defendant, *Charles G. Holmes*, unreasonable?" The trial judge changed the answer to such question from "Yes" to "No," dismissed the defendant's counterclaim, and directed judgment for plaintiff upon the promissory note for a balance determined to be due. (Other items of account were at issue between the parties but are not material here.)

Defendant appealed from the judgment so entered to the circuit court and the judgment of the civil court was there affirmed. From the judgment entered in accordance therewith the defendant has appealed.

For the appellant there was a brief by *Quarles, Spence & Quarles*, attorneys, and *Arthur B. Doe*, of counsel, and oral argument by *Howard T. Foulkes*, all of Milwaukee.

For the respondent there was a brief signed by *Roehr & Steinmetz*, attorneys, and *Julius E. Roehr*, of counsel, all of Milwaukee, and oral argument by *Julius E. Roehr*.

ESCHWEILER, J. Whether the testimony of defendant or Mueller as to the exact language used in the interview between them on July 26th when the relationship of employer and employee terminated be considered as the more correct recollection of what actually was said, we deem entirely immaterial.

From defendant's own testimony on direct and cross-examination the following facts appear: Defendant was the trusted employee of plaintiff, holding an important position of an executive nature as foreman or shop superintendent, continuing from the same position and situation that he had occupied prior to February 1, 1916, with the M. F. Co. As such foreman or superintendent he was at all times under the direction and supervision of Mr. Mueller, the secretary and general manager of the plaintiff. Repeatedly from the fall of 1916, when defendant had stated to Mr. Mueller that he had formed some idea as to a design for a smokeless furnace,

Mr. Mueller had requested defendant, in view of the approaching termination of their relationship, to put such idea into some concrete form by way of sketch or drawing.

From these and other undisputed facts it must be held that the request made by Mr. Mueller that defendant should devote the remainder of his time and attention while in plaintiff's employ to that express purpose was important and material. It involved no departure from the high grade of service which defendant had been rendering and for which he had been employed. Whether or not such requested service could be brought to a successful or practical termination within the period still left of defendant's employment was a matter of concern to plaintiff and not to defendant. Under such a situation there is no escape from the conclusion as a matter of law that defendant's wilful refusal to enter upon such required service was unjustifiable and a breach of his contract duty and obligation. If what followed be considered as a discharge of defendant by plaintiff it was justified. If it be considered a reason or excuse for defendant's ceasing to render service it was insufficient. Such conclusion is supported by the decisions. *Green v. Somers,* 163 Wis. 96, 100, 157 N. W. 529; *Green Bay F. Co. v. Jorgensen,* 165 Wis. 548, 552, 163 N. W. 142; *In re Milwaukee M. Co.* 246 Fed. 671, L. R. A. 1918C, 1027 and note p. 1030; *May v. New York M. P. Corp.* (Cal.) 187 Pac. 785, 788; note in 24 L. R. A. N. s. 814.

The defendant was not entitled to recover under his counterclaim. The forty-nine or fifty shares of stock of the M. F. Co. for which upon the undisputed record he had ostensibly subscribed could not have been lawfully issued to him and would have been void under the provisions of sec. 1753, Stats., except issued in consideration of money or labor or property at its true money value actually received by the corporation to the par value. Considering his own evidence alone, including his examination under sec. 4096, Stats., prior to the trial in the civil court, and which, although re-

turned with the record here, does not seem to have been offered in evidence on the trial but yet is referred to by defendant on this appeal, it appears that the subscription for the forty-nine shares of stock was made after defendant had an existing contract of employment with the M. F. Co.; that no change was then made in such contract; that the corporation received nothing of value at the time of the subscription from the defendant nor any obligation other than the form of his subscription. It was, under defendant's own testimony, a pure gratuity. Had the certificates of stock been actually made out for such subscription and delivered to defendant, it would nevertheless have been a void issue and he could have obtained no rights thereby as against the corporation. *Thronson v. Universal Mfg. Co.* 164 Wis. 44, 49, 159 N. W. 575; *Tramp v. Marquesen,* 188 Iowa, 968, 176 N. W. 977. He surrendered nothing of value at the time of the dissolution of the M. F. Co. There was nothing pleaded, proven, or offered to be proven by defendant tending to show anything in the nature of a valid and binding contract between them whereby defendant was to receive anything from the plaintiff for such surrender. The errors claimed to have been made on the trial as to the rejection of evidence offered by defendant, including the memorandum as to the value of defendant's stock which is set out in the statement of facts, could in no wise have prejudiced the merits of defendant's position on this branch of the case.

*By the Court.*—Judgment affirmed.