DAKIN, Respondent, v. ALLIS, Appellant.

*September 3—September 29, 1964.*

**52**

[redacted]

For the appellant there were briefs and oral argument by *David J. Schoetz* and *Aaron D. Levine,* both of Milwaukee.

For the respondent there was a brief and oral argument by *Byron Axel* of Milwaukee.

WILKIE, J.

> "Heav'n has no rage, like love to hatred turn'd,
> Nor Hell a fury, like a woman scorn'd."
>
> William Congreve, *The Mourning Bride.*

Appellant's main contention is that the release and agreement constitute a valid compromise of a disputed claim arising from an alleged civil wrong (alienation of the affections of respondent's husband and acts of criminal conversation involving him and the appellant) and that the agreement not to sue in connection not only with past but also future acts of alienation of affection or criminal conversation is valid and an effective bar, as a matter of law, to the new lawsuit commenced by the respondent. This question has not been decided heretofore by this court.

Actions by a wife for the loss of the affections and society of her husband have been permitted by the legislature,[1] although a relatively short statute of limitations—one year—has been prescribed for the bringing of such an action.[2] Wisconsin also has long recognized the right of a wife to maintain an action for criminal conversation with her husband.[3]

To the extent that the release and settlement agreement accomplished a compromise of respondent's alleged damages

---

[1] Sec. 246.07, Stats.

[2] Sec. 330.22 (2), Stats.

[3] *Woodman v. Goodrich* (1940), 234 Wis. 565, 291 N. W. 768.

incurred by reason of appellant's alleged past misconduct, such release and covenant not to sue are not in violation of public policy and are valid. Although there is no Wisconsin case so holding we adopt the view expressed by the Indiana supreme court in *Wells v. Sutton* [4] in which it upheld a contract for silence entered into by an aggrieved husband who agreed that certain notes that he executed would be surrendered should he ever after "refer to or speak of said criminal intimacy" of his alienated wife and the defendant who refused to honor the notes when the husband broke his contract for silence. The contract was upheld against the challenge that it was contrary to public policy and void. The agreement contemplated past misconduct ("said criminal intimacy") and did not extend to subsequent wrongful misconduct.

Unquestionably in the case at bar the release included injury to the respondent for future misconduct on the part of appellant and the agreement extended the covenant not to sue to such subsequent misconduct. To this extent both the release and agreement violate public policy and are invalid. We conclude that it is against public policy to covenant not to sue based on misconduct of the defendant that is subsequent to the agreement. Such an agreement attempts to buy silence as to a future offense (criminal conversation) that may actually be a crime (adultery), or as to future acts alienating the husband's affection and intermeddling with a relationship (marriage) that receives the highest protection of the law. Such an agreement is prejudicial to the public welfare and against good morals; as such, it violates public policy.

Thus appellant's contention that respondent's second lawsuit is totally barred by the release and covenant not to sue is untenable.

---

[4] (1882), 85 Ind. 70.

Appellant's further contention that since Keith's affections for his wife were already completely alienated before the 1961 settlement there could be no alienation of affections involved in any of the alleged wrongful misconduct during 1962, raises several factual issues: (1) Had the husband's affections for the respondent been wholly lost prior to December 28, 1961; (2) if so, were these affections restored in whole or in part after the settlement; (3) what acts, if any, of alienation of affections occurred during the period of January through October, 1962; and (4) what damages, if any, were suffered by the respondent by reason of these acts by appellant?

If Keith's affections had been completely alienated by December 28, 1961, and were never re-energized, even in part, then there was but one continuous alienation and this would substantially affect the damages to be awarded to the respondent.[5] Determinations as to when the acts of criminal conversation, if any, occurred after the settlement, and the resulting injury caused respondent, are further fact questions that must abide a trial.

Appellant's final contention is that the respondent is barred and estopped from bringing her second lawsuit for the reason that she has neither restored nor offered to restore appellant to her position prior to execution of the disputed release and agreement. But the parties agreed that if any part of the release or agreement were declared illegal or against public policy the remainder which is deemed legal was to continue in full force and effect. Insofar as the release and agreement embraced actions for past misconduct it is legal; as to actions for alleged future misconduct, it is illegal. Respondent's second lawsuit requires neither reliance on nor the aid of that portion of the contract that is illegal. There is no condition precedent, where, as here,

---

[5] 27 Am. Jur., Husband and Wife, p. 137, sec. 537.

there is a divisible illegal covenant in the contract, that the respondent restore or offer to restore the consideration received ($13,500) under the release and agreement of December 28, 1961.[6] At least a part of the consideration constituted a legal settlement of the lawsuit founded on past actions. That part of the consideration that may have been received in payment for the illegal contract of silence as to future misconduct need not be returned. Summary judgment was properly denied.

*By the Court.*—Order denying motion for summary judgment affirmed, and cause remanded for further proceedings not inconsistent with this opinion. Costs allowed to respondent, including printing expenses on brief in excess of 40 pages.

---

[6] *Clarke v. Lincoln Lumber Co.* (1884), 59 Wis. 655, 18 N. W. 492; *Thronson v. Universal Mfg. Co.* (1916), 164 Wis. 44, 159 N. W. 575.