SIEGEL, Appellant, v. AMERICAN INTERSTATE INSURANCE CORPORATION OF WISCONSIN, Respondent.

*No. 719 (1974). Submitted on briefs April 12, 1976.—Decided May 4, 1976.*
(Also reported in 241 N. W. 2d 178.)

For the appellant the cause was submitted on the brief of *Merton N. Rotter* and *Warshafsky, Rotter & Tarnoff, S. C.* of Milwaukee.

For the respondent the cause was submitted on the brief of *Jeffrey P. Aiken* and *Frisch, Dudek & Slattery, Ltd.,* of Milwaukee.

CONNOR T. HANSEN, J.   Plaintiff-appellant, Joseph D. Siegel (hereinafter insured), purchased a policy of automobile liability insurance, effective January 7, 1972, from defendant-respondent, American Interstate Insurance Corporation of Wisconsin (hereinafter Great Lakes). The insurance company was at that time known as Great Lakes Insurance Corporation of Wisconsin.

Siegel is alleged to have been injured in a two-car accident in Iowa on August 22, 1972. For the purposes of this appeal, no issue is raised as to either the identity of the driver of the second car or the fact that he was an uninsured driver.

The instant appeal is the result of specific scheduled payments contained in the insurance contract for bodily injury by an uninsured driver.

The policy issued by Great Lakes to the insured provided for uninsured motorist coverage in the following terms:

"Coverage I—Family Protection Against Uninsured Motorists (Bodily Injury Liability): . . .

" . . .

"INSURING AGREEMENTS—COVERAGE 1

"1. Bodily Injury by Uninsured Driver. To pay all sums as provided in the following schedule which the insured or his legal representatives shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so, the amount of recovery under the following schedules, shall be made by agreement between the insured or such representative and the company, or, if they fail to agree, by normal recourse to the court having jurisdiction. Payments under the following Schedule are subject to the maximums stated under paragraph 4, Limits of Liability of the Conditions of this coverage.

"SCHEDULE:

"(1) Medical expense. All reasonable expenses incurred from the date of the accident by such insured or legal representatives, for necessary medical, surgical and dental services, including prosthetic devices, and necessary ambulance, hospital and professional nursing to or for each insured who sustains bodily injury caused by accident.

"(2) Loss of earnings. The actual loss of earnings suffered by the insured if as a result of such accident he becomes wholly unable to engage in his usual occupation or employment, and while such total disability continues during his lifetime. Such actual loss of earnings shall be computed upon the basis of the insured's average monthly earnings during the one year immediately preceding such accident.

"(3) Disability. Ten dollars per day to each insured who is the head of a household or to each insured who is the spouse of the head of a household at the time of such accident, and five dollars per day to any other insured, while such insured is totally disabled as a result of bodily injury sustained in such accident requiring continuous confinement indoors, under the care of a licensed doctor of medicine other than himself.

"(4) Death benefits and funeral expenses. The maximum benefit under this section shall be $15,000 for the death of any one person as a result of said accident and $30,000 if such accident results in the death of more than one person. The amount recoverable within these limits shall be governed by the applicable wrongful Death and/or Survival Statutes."

At the time the policy was issued, sec. 204.30 (5) (a), Stats. 1971, required uninsured motorist coverage as follows:

"(5) UNINSURED MOTORIST COVERAGE. (a) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law *for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle* shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death in the amount of at least $15,000 per person and $30,000 per accident under provisions approved by the commissioner of insurance, for the protection of persons injured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. The uninsured motorist bodily injury coverage limits provided in an automobile liability or motor vehicle liability policy of insurance may be made available to the insured up to the bodily injury coverage limits provided in the remaining portions of the policy." (Emphasis added.)

The issue to be determined is whether the trial court committed an error of law when it concluded that the

insurance contract issued by Great Lakes complied with the provisions of sec. 204.30 (5) (a), Stats.

Section 204.30 (5) (a), Stats., formerly sec. 204.30 (5), was created by ch. 486, Laws of 1965, for the purpose of placing the insured in the same position he would have been in if the uninsured motorist had been insured. (Legislative Ref. Bureau, Drafting File, ch. 72, Laws of 1973.) In 1967, it was amended to provide for minimum limits of coverage, ch. 174, Laws of 1967. The minimum limits were increased in 1969, to $15,000 per person and $30,000 per accident, ch. 312, Laws of 1969. Coverage was subsequently made mandatory, ch. 28, Laws of 1971, sec. 204.30 (5) (a), Stats. 1971, *supra.* In 1973, the section was amended to prohibit policy reducing clauses which would render the insured's coverage less than if the uninsured motorist had been insured to the same limits as those mandated by the statute. This 1973 amendment was enacted after the date of the events giving rise to the instant litigation.

The statute is similar to those of many other states, Bjork, *Uninsured Motorist Coverage—New Developments, Problems and Opportunities,* 45 Wis. Bar Bull. 47 (Oct. 1972) ; Widiss, *A Guide to Uninsured Motorist Coverage,* p. 20, sec. 2.1 (1969) ; *Sahloff v. Western Casualty & Surety Co.* (1969), 45 Wis. 2d 60, 63, 64, 171 N. W. 2d 914. Basically, it requires that automobile accident insurance policies contain a provision which would insure the policyholder for sums which he is legally entitled to recover up to at least the statutorily required amount should bodily injury or death occur resulting from fault on the part of an uninsured motorist. The policy coverage provided under this and similar statutes has largely been standardized within the insurance industry, Widiss, *supra,* pp. 20–23, sec. 2.2.

Statutory construction involves a question of law and on such questions this court is not required to give any

special weight to the conclusions of the trial court. *Engineers & Scientists v. Milwaukee* (1968), 38 Wis. 2d 550, 554, 157 N. W. 2d 572.

This court has had several occasions to address the various provisions of the statute since its enactment. These cases have emphasized that insurers must provide coverage only to the extent clearly required by the terms of the statute. Thus, in *Amidzich v. Charter Oak Fire Ins. Co.* (1969), 44 Wis. 2d 45, 170 N. W. 2d 813, it was determined that a policy requirement that physical contact be shown before recovery could be had in a hit-and-run accident situation did not violate the provisions of the statute. It was therein stated the insurer had in fact broadened the coverage because by proving "physical contact," the insured was relieved of the burden of proving the identity of the hit-and-run driver or that he was actually insured. In reaching this conclusion, it was held that:

". . . There is no requirement either by specific legislation or by necessary implication that would lead us to conclude that it was the legislative intent that coverage must be afforded in the absence of 'physical contact.'" *Amidzich v. Charter Oak Fire Ins. Co., supra,* page 54.

Prior to the 1973 amendment, this court addressed the validity of reducing clauses in uninsured motorists' agreements. It was held that because the statute was silent on the subject, it must be concluded that the legislature did not intend to prohibit such clauses.[1] The reasoning of *Leatherman* was found controlling in *Nelson v. Employers Mut. Casualty Co.* (1974), 63 Wis. 2d 558, 217 N. W. 2d 670, a case tried prior to the 1973 amendment, and it was stated at page 568:

---

[1] *Scherr v. Drobac* (1972), 53 Wis. 2d 308, 193 N. W. 2d 14; *Leatherman v. American Family Mut. Ins. Co.* (1971), 52 Wis. 2d 644, 190 N. W. 2d 904.

". . . The question is not public policy, who paid insurance premiums or any other issue, but what sec. 204.30 (5), Stats., 1967, requires in way of uninsured motorist coverage."

The process of ascertaining legislative intent in such situations was described therein as follows, at page 569:

". . . Legislative intent must be conveyed in language sufficient for this court to find the intention either clearly expressed or if there is an ambiguity by resort to rules of construction, legislative history and other collateral legitimate sources."

These cases hold that an insurer will not be required to provide coverage beyond that clearly mandated by the terms of the statute.

However, this court has not hesitated to strike policy provisions in uninsured driver agreements which violate the statutory mandate. In *Nixon v. Farmers Ins. Exchange* (1972), 56 Wis. 2d 1, 201 N. W. 2d 543, a policy clause requiring that proceedings be commenced within one year from the date of the accident was deemed to violate the statute. This was so because it cut the normal period of the three-year statute of limitations, thus failing to provide the statutorily required protection of persons " 'who are legally entitled to recover damages from owners or operators of uninsured motor vehicles,' " *Nixon v. Farmers Ins. Exchange, supra,* page 5.

The question then is whether Great Lakes, through its schedule of benefits, has reduced its uninsured motorist coverage below the limits required by sec. 204.30 (5) (a), Stats. 1971.

The statute directs that coverage be provided to the stated limits for "bodily injury or death . . . for the protection of persons injured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom."

The statute does not purport to enumerate what elements of damages are subsumed under the term "bodily injury." However, this does not obviate the fact that the term "bodily injury" encompasses certain generally recognized elements of damage for which an insured is entitled to be compensated.

This is not a situation where a term presents an ambiguity. In Widiss, *supra,* pages 97, 98, sec. 2.50, the author notes that:

"Although the uninsured motorist endorsement defines many terms used in the coverage, the provisions in the standard endorsement do not include any definition or delineation of what is meant by the phrase 'damages . . . because of bodily injury.' It has generally been held to include losses attributable to medical expenses, lost wages, pain and suffering occasioned by *injury, sickness, or disease including death.* . . Generally, insurance companies have not disputed claims for medical expenses, lost wages, etc. These items are damages which the uninsured motorist would be liable for if the insured were to bring an action against him, and therefore are generally regarded as sums which the insured is entitled to recover under the uninsured motorist coverage. . . ."

This is in accord with 9 Blashfield, *Automobile Law and Practice,* pp. 400–407, secs. 387.3–387.7, wherein the author recognizes that the primary legal element of damage resulting from injury is pain and suffering, while other appropriately considered damages include those resulting from mental anguish, disability, and economic losses.

The legislature has chosen to use a comprehensive term in denoting the coverage required by the uninsured motorist statute. The term is generally recognized to include certain elements of damage which are an integral part of the bodily injury. There is no indication of any intent to limit the applicability of this comprehensive term in favor of less coverage for fewer elements of damage

than those generally recognized. Rather, the language utilized is broad, pointing to the conclusion that the insured is entitled to recover for those elements of damage for which a comprehensive definition of the term "bodily injury" would allow. This conclusion is buttressed by the fact that the legislature has, on a number of occasions increased the extent to which the insured must be protected by the various amendments to the original statute. Great Lakes, by limiting coverage to the schedule of benefits, *supra,* has failed to provide the protection required by the statute.

In *Amidzich v. Charter Oak Fire Ins. Co., supra,* page 53, it was stated:

". . . Although a legislature or a court cannot *ex post facto* compel the performance of conditions in a contract which the parties did not contemplate or bargain for, coverages omitted from an insurance contract may nevertheless be compelled and enforced as though a part thereof where the inclusion of such coverage is required by a properly enacted statute. In such case a policy of insurance omitting a required coverage will be enforced as though it had been written in accordance with the legislative prescription. 44 C. J. S., *Insurance,* sec. 302, pp., 1215, 1216; *Zippel v. Country Gardens, Inc.* (1952), 262 Wis. 567, 55 N. W. 2d 903; *Sandstrom v. Estate of Clausen* (1951), 258 Wis. 534, 46 N. W. 2d 831. . . ."

The statute requires that policy provisions thereunder be approved by the commissioner of insurance. Such approval was given for the provisions here in question. However, that approval is not binding on this court in its review of what the statute itself requires. *Nixon v. Farmers Ins. Exchange, supra,* pp. 5, 6.

It is our opinion that the trial court committed an error of law when it determined that the Great Lakes' policy met the requirements of sec. 204.30 (5) (a), Stats. 1971.

*By the Court.*—Reversed and remanded for proceedings consistent with this opinion.