Elizabeth RADLEIN, a/k/a Elizabeth Grenier,
Plaintiff-Appellant-Petitioner,†

v.

INDUSTRIAL FIRE & CASUALTY INSURANCE COMPANY,
Defendant-Respondent.

Supreme Court

*No. 82–536. Argued January 30, 1984.—Decided March 27, 1984.*

(Also reported in 345 N.W.2d 874.)

† Motion for reconsideration denied. ABRAHAMSON, J., dissents.
HEFFERNAN, C.J., and BABLITCH, WILLIAM A., J., took no part.

For the plaintiff-appellent-petitioner there were briefs in court of appeals by *Marjan R. Kmiec,* Milwaukee, and oral argument by *Mr. Kmiec.*

For the defendant-respondent there was a brief in court of appeals by *Ernest J. Philipp, Mont L. Martin* and *Philipp & Sletteland, S.C.,* Milwaukee, and oral argument by *Ernest J. Philipp.*

STEINMETZ, J. The first issue in this case is whether the injured plaintiff has stated a bad faith claim against her former husband's insurance carrier since that company did not pay the entire $15,000 of

uninsured motorist coverage to her when her injuries potentially had a disproportionately greater value than that. The second issue is whether plaintiff's attorney commenced a frivolous action, since his client had previously settled her uninsured motorist claim with the carrier and, since the theory of law relied on has never been established in this state, although it is argued it is a predictable development or extension of existing law.

The defendant, Industrial Fire & Casualty Insurance Co. (Industrial), brought a motion to dismiss before the Milwaukee county circuit court, the Honorable Elliot N. Walstead, reserve judge presiding. Industrial also requested reasonable attorney fees pursuant to sec. 814.025, Stats.[1] The motion to dismiss was presented pursuant to sec. 802.06(2),[2] and upon the court receiv-

---

[1] Sec. 814.025, Stats., provides:

"**814.025 Costs upon frivolous claims and counterclaims.** (1) If an action or special proceeding commenced or continued by a plaintiff or a counterclaim, defense or cross complaint commenced, used or continued by a defendant is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

"(2) The costs and fees awarded under sub. (1) may be assessed fully against either the party bringing the action, special proceeding, cross complaint, defense or counterclaim or the attorney representing the party or may be assessed so that the party and the attorney each pay a portion of the costs and fees.

"(3) In order to find an action, special proceeding, counterclaim, defense or cross complaint to be frivolous under sub. (1), the court must find one or more of the following:

"(a) The action, special proceeding, counterclaim, defense or cross complaint was commenced, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

"(b) The party or the party's attorney knew, or should have known, that the action, special proceeding, counterclaim, defense or cross complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law."

[2] Sec. 802.06(2), Stats., provides:

ing and accepting an affidavit on behalf of Industrial's attorney and documents from a previous court action, the motion converted to one for summary judgment. Therefore, though the trial court stated it was granting a motion to dismiss, it was actually a motion for summary judgment that was granted. *See Schlumpf v. Yellick,* 94 Wis. 2d 504, 511, 288 N.W.2d 834 (1980).

Summary judgment is appropriate when material facts are not in dispute and when inferences which may reasonably be drawn from the facts are not doubtful and lead only to one conclusion. *Jahns v. Milwaukee Mut. Ins. Co.,* 37 Wis. 2d 524, 527, 155 N.W.2d 674 (1968), *Fed. Deposit Ins. Corp. v. First Mortg. Investors,* 76

"(2) How PRESENTED. Every defense, in law or fact, except the defense of improper venue, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or 3rd party claim shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: a) lack of capacity to sue or be sued, b) lack of jurisdiction over the subject matter, c) lack of jurisdiction over the person or property, d) insufficiency of summons or process, e) untimeliness or insufficiency of service of summons or process, f) failure to state a claim upon which relief can be granted, g) failure to join a party under s. 803.03, h) res judicata, i) statute of limitations, j) another action pending between the same parties for the same cause. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. Objection to venue shall be made in accordance with s. 801.53. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief. If on a motion asserting the defense described in f) to dismiss for failure of the pleading to state a claim upon which relief can be granted, or on a motion asserting the defenses described in h) or i), matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.08, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by s. 802.08."

Wis. 2d 151, 154–55, 250 N.W.2d 362 (1977), *Heck & Paetow Claim Service, Inc. v. Heck,* 93 Wis. 2d 349, 355–56, 286 N.W.2d 831 (1980), *Board of Regents v. Mussallem,* 94 Wis. 2d 657, 672–73, 289 N.W.2d 801 (1980), *see* sec. 802.08(2), Stats.

The only document on file with the trial court for the support of plaintiff's position was the complaint. No depositions, answers to interrogatories, or admissions were on file, and plaintiff did not submit an opposing affidavit to the motion.

Sec. 802.08(3), Stats.,[3] governs the disposition of summary judgment motions when the adverse party rests on the mere allegations of the pleadings. The plaintiff rested upon the allegations of the complaint which did not create any material issues of fact and therefore it was proper for the trial court to determine the legal effect of a release given by the plaintiff in a previous court action. *Plummer v. Leonhard,* 44 Wis. 2d 686, 692, 172 N.W.2d 1 (1969), *Pokorny v. Stastny,* 51 Wis. 2d 14, 24, 186 N.W.2d 284 (1971).

The trial court dismissed the complaint on the basis of the release executed by the plaintiff in the previous

---

[3] Sec. 802.08(3), Stats., provides:

"(3) SUPPORTING PAPERS. Supporting and opposing affidavits shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence. Copies of all papers or parts thereof referred to in an affidavit shall be attached thereto and served therewith, if not already of record. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party."

lawsuit, which was with the court's approval. Judge Walstead in a bench decision stated:

"I have read the release. It seems to be a good release in the absence of fraud and mistake. . . . I don't see how you can have people in court under the supervision of a court sign a release with all of the safeguards that attend that kind of assignment and then, disregard it and have it set aside in the absence of fraud or mistake."

The trial court granted the motion and found that the plaintiff's attorney "should have known that the action was without any reasonable basis in law and could not be supported by a good faith argument." The trial court then adjourned the case for a determination regarding the defendant's reasonable attorney fees. The plaintiff's attorney did not ask the court to stay the finding of frivolousness, but rather only the terms pending an appeal "of the main action." The record shows that a hearing as to defendant's attorney fees was held on March 1, 1982; however, the transcript of the hearing is not in the record. After that hearing the judge signed an order for judgment and judgment awarding actual attorney fees and court costs pursuant to sec. 814.025, Stats., in the amount of $2,608.75 attorney fees and $102.69 in disbursements for a total of $2,711.44. There is an affidavit in the record from defendant's attorney stating the hours worked and the hourly rate for a total as reflected in the judge's order.

The plaintiff appealed to the court of appeals. That court, in an unpublished decision, affirmed the granting of the summary judgment, but reversed and remanded to the trial court to make specific findings under the frivolous claim statute, if appropriate, that the claim of plaintiff was frivolous and how it violated the options in sec. 814.025(3)(a) or (b), Stats., by finding that it was: (a) "commenced, used or continued in bad faith, solely for purposes of harassing or maliciously

injuring another" or (b) "the party's attorney knew, or should have known, that the action . . . was without any reasonable basis in law . . . *and* could not be supported by a good faith argument for an extension, modification or reversal of existing law." (Emphasis added.)

Before a proper finding of frivolous claim is made pursuant to sec. 814.025(3)(b), Stats., it is necessary for the trial court to find that in addition to or in support of that finding the attorney knew the action was without any reasonable basis in law *and* could not be supported by a good faith argument for an extension, modification or reversal of existing law. The trial court must consider each of the alternative possibilities of a good faith argument, *i.e.*, was the existing law ready for an extension, modification or reversal. If the argument of the attorney does not establish the law is ready for an extension, modification or reversal, he is still not responsible for having commenced a frivolous action unless his argument does not show he made it in good faith. It is a two-pronged test. First, is the law ready for extension, modification or reversal, and, if not, then secondly, was the argument for such change made in good faith even though not successful.

The court of appeals stated that until the trial court makes such necessary findings, the appellate court will not on review be able to determine whether those findings are contrary to the great weight and clear preponderance of the evidence. *Sommer v. Carr,* 99 Wis. 2d 789, 792, 299 N.W.2d 856 (1981) held: "The statute does not allow the trial judge to conclude frivolousness or lack of it without findings stating which statutory criteria were present, harassment or knowledge or imputed knowledge that there was not 'any reasonable basis in law or equity' for the position taken."

However, in this case, since there are no issues of fact and the decision is controlled not only by existing law but also by whether the law is ready for extension, modification or reversal, then the standard of review is not whether the findings of fact of a trial court were against the great weight and clear preponderance of the evidence, but instead it is a review of the application of the appropriate law in granting the motion for summary judgment, and there we do not defer to the trial court but analyze and apply the law without deference to the trial court. *State ex rel. Bilder v. Delavan Tp.*, 112 Wis. 2d 539, 549, 334 N.W.2d 252 (1983); *State v. Ziegenhagen,* 73 Wis. 2d 656, 664, 245 N.W.2d 656 (1976). This is the first review we have considered since *Sommer* on the claim that the law, in this case bad faith, is ready for extension, modification or reversal as to uninsured motorist coverage and whether a good faith argument can be made for it.

Frivolous action claims are an especially delicate area since it is here that ingenuity, foresightedness and competency of the bar must be encouraged and not stifled. Without that dedication of the bar, Wisconsin would still have the duties of landlords to others dependent on the relationship of those persons to the land, *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 236 N.W.2d 1 (1975); statutes of limitations would start from the day of the actual injury, not from the date the plaintiff knew of the injury or should have known, *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983); and an injured plaintiff would have to identify the exact drug manufacturer whose product injured her, *Collins v. Eli Lilly Co.,* 116 Wis. 2d 166, 342 N.W.2d 37 (1984). These are only a few changes in the law in recent years without attempting to identify all of them. The present law of bad faith itself, products liability and punitive damages would not have developed but for the informed,

good faith positions taken by attorneys for development of the law. However, that does not mean that good faith depends on the success of a court accepting the argument for change.

Lawyers must have the opportunity to be able to espouse a legal principle not presently accepted without fears of personal loss or prosecution for unethical conduct by the Board of Attorneys Professional Responsibility. However, in bringing a cause of action, the other side is affected and has expenses due to defending against the new approach to existing but perhaps developing law. Precious court time must not be wasted on frivolous actions, for one of the trial judge's most time consuming and challenging duties is to determine the future predictable course of the law. In balancing the conflicting interests in such actions, the attorneys bringing the new cause for acceptance must be able to argue in good faith that the law has reached such point that it is ready for consideration, for extension, modification or for rejection by reversal. If the attorney cannot make such good faith argument, the attorney must bear the costs and reasonable attorney fees of the other side for not being able to persuade the court that the effort was based on good faith that the law is ready for change and, therefore, the cause, whether it be prosecutorial or defensive, is frivolous. The argument for change need not be successful as long as made in good faith and also is one that could be made by a reasonable attorney.

Applying the principle of good faith argument for the extension, modification or reversal of existing law to this case requires the consideration of the complaint in this action and a previous case in which the plaintiff, Elizabeth Radlein, a/k/a Elizabeth Grenier, was also a plaintiff. The first action was case no. 457–493, Milwaukee county circuit court, which was before the Honorable Patrick J. Madden. That case involved an automo-

bile accident which occurred in Milwaukee on December 15, 1972, involving an automobile driven by Elizabeth's brother, Donovan Radlein, and occupied by the plaintiff, Elizabeth Radlein, among others. At the time of the accident, Donovan Radlein was uninsured but plaintiff, Elizabeth Radlein, was covered by the uninsured motorist coverage carried by her former husband on his car. That uninsured motorist coverage was with the defendant, Industrial, in the limit of $15,000.

Following that accident, in which the driver Donovan and two passengers were killed and the plaintiff was seriously injured, Elizabeth Radlein commenced the action against Milwaukee county and Milwaukee Transport Services, Inc., on the allegation that a driver of a city bus was causally negligent. The accident was a one-car accident when the automobile operated by Donovan struck a railroad abutment. The cause of the accident remained in dispute. Two witnesses had differing versions as to the reason for it. There may or may not have been a bus in the area just prior to the impact. Even if there were a bus in the general location, there was no contact between the alleged bus and the Radlein vehicle. There was also information that the Radlein vehicle may have been involved in racing with another vehicle just before the impact.

The policy of insurance of Industrial included a standard arbitration clause calling for arbitration proceedings should Elizabeth Radlein and Industrial disagree over any claim made under the uninsured motorist endorsement. Instead of exercising this contractual right to arbitrate her claim, the parties stipulated to waive arbitration and have the controversy litigated. Following the stipulation, plaintiff's counsel moved to amend the complaint to include Industrial as a named defendant and also the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, the owner of the abutment.

The stipulation, which was signed by Elizabeth Radlein's attorney in that action, stated in one significant part the following:

"WHEREAS, it is uncertain whether said Transport Company bus was, in fact, involved in the said collision, in the absence of which involvement the said uninsured motorist claim would be proper; and

"WHEREAS, it seems appropriate to have all factual issues with regard to this matter decided at one proceeding; . . . ."

A jury trial began on January 7, 1980, before Judge Madden. One day later, all parties, except the defendant railroad, reached a compromise settlement of the dispute. According to the terms of the settlement, the defendants were to contribute a total of $50,000 to be distributed to the respective plaintiffs.[4] Milwaukee county supplied $44,000 of the settlement and $6,000 was paid by Industrial from its uninsured motorist coverage.

Of the total settlement, $25,000 was for Elizabeth Radlein and from the record it appears that the balance was for others who sustained damages as a result of the accident. One of those parties was Associated Hospital Services, Inc. that had a $25,000 claim but received $2,500. That entity was represented in that first case by the same attorney, Marjan R. Kmiec, who represents the plaintiff in this present case.

Judge Madden, at the time the settlement was entered into, on the record questioned Elizabeth Radlein as to her understanding of her rights under it as follows:

"Do you understand that if the settlement didn't take place, and various other things occurred, that the matter could go to arbitration perhaps even though that has

---

[4] The plaintiffs in the action before Judge Madden were: Elizabeth Grenier, Regis Grenier, Ingeborg Radlein as special administrator for the estate of Donovan Radlein, deceased, and Associated Hospital Services, Inc.

been waived up to this point, but it might be reinstated, but you're waiving any right the minute you've agreed to the settlement, and you will have no further claims against anybody as a result of that automobile accident that has brought us here today. This will be the end.

". . . [H]owever, you would be waiving your rights as against the Milwaukee County, The Transport Company and your rights under the uninsured motorist provision, and of course, the settlement with Blue Cross, which is a rather substantial reduction in their possibly subrogated claim, which is finished also. Do you have any questions at all?

"MRS. GRENIER: No.

". . . .

"THE COURT: Well, after—the Court is not directly aware of the testimony that would be presented, and from the records and proceedings to this point, substantial factual questions which could go either way, so that what you're doing is taking a certainty for speculative results. You might under circumstances get a lot more, you might end up with absolutely nothing or a very substantial amount compared to the settlement. Do you understand that's the way those things go?

"MRS. GRENIER: Yes.

"THE COURT: Has anyone put any kind of pressure on you to get you to agree to this settlement?

"MRS. GRENIER: No."

The trial court, in the instant case, considered the release signed by the plaintiff in her previous case involving the automobile accident. Judge Walstead held in his bench decision: "I don't see how you can have people in court under the supervision of a court sign a release with all of the safeguards that attend that kind of assignment and then, disregard it and have it set aside in the absence of fraud or mistake."

The court of appeals considered the release signed by Mrs. Radlein in the automobile accident case and referred to parts of the release as follows:

" '[O]f any and all claims, demands, rights, actions, or causes of action of whatsoever kind or nature, which the

undersigned have or ever had, may now have, or may hereafter have, and whatever now known or unknown, foreseen and unforeseen, and which arose from or which may arise from or by reason of or in any way connected with the injuries, losses, damages, disabilities, suffering, property damage, or loss, or the results thereof, both in tort and in contract, which heretofore have been or may hereafter be sustained by the undersigned, as a result of or in connection with the automobile accident heretofore described occurring on or about December 15, 1976, at about 7:07 p.m., at or near 1946 South Kinnickinnic Avenue, Milwaukee County, Wisconsin; . . . .'

"Radlein, among other things, agreed in the settlement to:

" '[H]ereby release and discharge, that fraction or portion of the total amount of their causes of action and claims for damages against . . . [Industrial], which shall hereafter, by further trial or other disposition of this or any other action, be determined to be that fraction and portion of the said total percentage of negligence attributable to . . . or any parties for whom [Industrial] would be responsible; . . . .'

"Radlein, among other things, also agreed in the settlement to:

" '[H]ereby, for themselves and for their heirs, administrators, executors, representatives, successors and assigns, satisfy, that part of their cause of action for which any liability is or may be found to be attributable to the settling parties herein, and they do further agree to indemnify and save harmless the said Milwaukee County, Milwaukee Transport Services, Inc., and Industrial Fire and Casualty Insurance Company, and their respective agents, employees, officers, successors, assigns and insurers, for any amount they will or may be required to pay upon any judgment obtained against them by any joint tort feasor, or any other party to said action, or to any other party for contribution, in any way arising out of the damages of the undersigned herein resulting from said accident that occurred on or about the 15th day of December, 1976, and that they will satisfy any such judgment against these settling parties by any such other person, and they do hereby further agree and authorize their attorneys to execute a stipula-

tion to dismiss on the merits and without costs as to the undersigned or to any of the settling parties, the said action herein above described and set forth, and that the said stipulation for dismissal and any other thereon shall be only as to . . . Industrial . . . .' "

Mrs. Radlein also executed a document entitled "Indemnifying Release and Trust Agreement" which subrogated Industrial to the extent of its $6,000 settlement. Mrs. Radlein used a *Pierringer*[5] release to release all defendants except the railroad and protect and preserve any claims which she had against the remaining defendant, the railroad.

The court of appeals affirmed the trial court holding the totality of the release bound Mrs. Radlein and there was no showing of bad faith by Industrial prior to the signing. Also, the court of appeals held against the plaintiff on the developmental argument made of the law. The court of appeals remanded the case to the trial court for specific findings on the issue of the plaintiff bringing a frivolous action.

In Mrs. Radlein's complaint she sued Industrial for bad faith, emotional distress, fraud, outrageous conduct, rescission or reformation and punitive damages. We look to the causes stated in the complaint and whether they were sustained by any evidence, inferences, information or arguments.

The release entered into by the plaintiff specifically named Industrial as a party to be released and its all-inclusive language embodies the causes of action set forth in the present complaint. The parties had a clear understanding as to the meaning of the release and the plaintiff, in particular, was aware of the effect on her that signing it would have. This was evidenced on the record before Judge Madden, at which time she was rep-

---

[5] *Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

resented by an attorney. The settlement was voluntary and informed on her part. The present complaint made conclusory allegations that the release was procured by means of fraud and economic coercion. The allegations of fraud did not set forth the particular circumstances constituting fraud as required under sec. 802.03(2), Stats.,[6] nor did plaintiff submit supporting papers setting forth specific facts showing that there was a genuine issue as to either fraud or coercion. Plaintiff failed to demonstrate there was a genuine issue of fact as to the validity of the release.

Plaintiff argues that the release was void because it was supported by inadequate consideration, and because it released future conduct and, therefore, was contrary to public policy. The future conduct was identified as paying the balance of the uninsured coverage between the $6,000 and the limit of $15,000.

Plaintiff argued that the release was not supported by adequate consideration because Industrial procured it by paying $6,000 when it had a contractual duty to pay $15,000, the policy limits. This is also the main thrust of plaintiff's argument regarding developmental law. She argues that since uninsured motorist coverage is indemnification coverage, the plaintiff suffering losses in excess of $15,000, the policy limit, is entitled to the limit regardless of any other factors. That is not the law presently. Whether that theory is presently available by good faith argument or whether the law is ready for such extension, modification or reversal will be discussed later in this opinion.

---

[6] Sec. 802.03(2), Stats., provides:

"802.03 **Pleading special matters.** . . . (2) FRAUD, MISTAKE AND CONDITION OF MIND. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

Industrial did not have a contractual duty to pay any amounts to the plaintiff at the time the release was executed; the contractual duty would have arisen only after it had been determined that the uninsured motorist, Donovan Radlein, was negligent and that Elizabeth sustained injury and damages as a result of Donovan's negligence. Sec. 632.32(4)(a), Stats.,[7] requires insurers to provide uninsured motorist coverage "[f]or the protection of persons injured who are *legally entitled* to recover damages from owners or operators of uninsured motor vehicles." (Emphasis added.) An insured is legally entitled to recover damages from an uninsured motorist only after sustaining the burden of proving (1)

[7] Sec. 632.32(4)(a), Stats., provides:

"(4) REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

"(a) *Uninsured motorist.* 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident. The insurer may increase the coverage limits provided under this paragraph up to the bodily injury liability limits provided in the policy.

"2. In this paragraph 'uninsured motor vehicle' also includes:

"a. An insured motor vehicle if before or after the accident the liability insurer of the motor vehicle is declared insolvent by a court of competent jurisdiction.

"b. An unidentified motor vehicle involved in a hit-and-run accident.

"3. Insurers making payment under the uninsured motorists' coverage shall, to the extent of the payment, be subrogated to the rights of their insureds."

causal negligence on the part of the uninsured motorist, and (2) damages. Plaintiff's argument is contrary to Wisconsin statutory and case law because an insured does not have an absolute right to recover under an uninsured motorist endorsement once she has been determined to have sustained a loss.

When the release was executed plaintiff's claim was still a disputed claim. "[W]hen a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 691, 271 N.W.2d 368 (1978).

Wisconsin law requires insurers to compensate insureds and claims made under an uninsured motorist endorsement only when it can be established that the uninsured motorist was negligent. The settlement of disputed claims does not in any way contravene Wisconsin public policy. Wisconsin courts look with great favor upon settlements of litigation. *D'Angelo v. Cornell Paperboard Products Co.*, 19 Wis. 2d 390, 399, 120 N.W.2d 70 (1963).

This plaintiff stipulated to waive arbitration which was permissible. *Collicott v. Economy Fire & Casualty Co.*, 68 Wis. 2d 115, 121, 227 N.W.2d 668 (1975); *Schramm v. Dotz*, 23 Wis. 2d 678, 682, 127 N.W.2d 779 (1964). Arbitration was waived and the plaintiff was then in the position of having all parties in one lawsuit for total determination of respective liabilities and it is that lawsuit she settled. Certainly, that cannot be bad faith on the insurer's part.

The record displays that various contingent factors which would have affected the plaintiff's potential remedies were considered before the release was signed. They were first, liability of the uninsured motorist had not been established since the case had not been completed.

Secondly, there was, due to the nature of the accident, a potential of contributory negligence on plaintiff's own part regarding the accident and her injuries.

Third, there was an uncertainty of whether there was a transport bus in the vicinity at the time of the accident and if there was, then what cause that bus driver had in the accident.

Fourth, if the bus driver were found negligent and plaintiff recovered in excess of $15,000 from Milwaukee county, the uninsured motorist limit, the plaintiff would not be entitled to the $15,000 having recovered in excess of that amount from an insured party. *See Drake v. Milwaukee Mut. Ins. Co.,* 70 Wis. 2d 977, 982, 236 N.W.2d 204 (1975), *Leatherman v. American Family Mut. Ins. Co.,* 52 Wis. 2d 644, 190 N.W.2d 904 (1971); *Scherr v. Drobac,* 53 Wis. 2d 308, 193 N.W.2d 14 (1972); *Nelson v. Employers Mut. Casualty Co.,* 63 Wis. 2d 558, 217 N.W.2d 670 (1974). In *Nelson* at 568, we stated: "The court again held that once other sources yielded the amount of the uninsured motorist coverage available to the plaintiff under the uninsured motorist feature of his own policy, the uninsured motorist coverage in his policy was not available to him." The court of appeals, on this subject stated: "Radlein acknowledges in her complaint that in the settlement of the initial lawsuit she received $25,000. This amount was more than the $15,000 statutory minimum required for uninsured motorist coverage. As a matter of law, Radlein received more than the statutory minimum, regardless of where the settlement money came from."

Fifth, since the record of the first day of trial is not before us, we do not know how the case was proceeding for the plaintiff, but the judge and attorneys were there to make that judgment and the case was settled on the second day of trial. The record does not show how far the trial had actually progressed.

There is nothing in any Wisconsin case which would lead to the conclusion that the plaintiff had an absolute

right to recover the policy limit of uninsured motorist coverage once it was determined that she had sustained a loss in greater amount, and that therefore the carrier was under a good faith duty to pay the entire $15,000 limit at the time of the settlement. That is not the Wisconsin law; however, regarding the second issue of whether plaintiff's attorney brought a frivolous lawsuit, it must be determined whether a good faith argument could be made that Wisconsin law was ready for extension, modification or reversal. The law, as argued by plaintiff's attorney, is or should be that payment of the $15,000 limit was a contractual obligation not open to compromise and settlement, and as such voids the release for policy reasons.

Plaintiff cites *Landvatter v. Globe Security Ins. Co.,* 100 Wis. 2d 21, 300 N.W.2d 875 (Ct. App. 1980), which found statutory authority in sec. 631.43(1), Stats., for stacking of uninsured motorist coverage in different policies. However, *Landvatter* had nothing to do with eliminating the need to establish the legal liability of the uninsured motorist.

Other cases cited by plaintiff are completely without value for the proposition espoused. They are: *Gimbels Midwest v. Northwestern Nat. Ins. Co.,* 72 Wis. 2d 84, 91, 240 N.W.2d 140 (1976), which dealt with the valued policy law requiring the carrier to pay the full face value of the policy under the circumstances of that case; *Siegel v. American Interstate Ins. Corp.,* 72 Wis. 2d 522, 530, 241 N.W.2d 178 (1976), where the uninsured motorist coverage was less than required by statute; *Vidmar v. American Family Mut. Ins. Co.,* 104 Wis. 2d 360, 370, 312 N.W.2d 129 (1981), held that the policy behind the uninsured motorist statute is to afford an insured, injured by an uninsured motorist, the same protection he would have had for an injury caused by a motorist insured by a standard automobile policy. Such holding is not a forerunner of a per se rule for payment of unin-

sured motorist coverage as a contractual obligation without a showing of legal liability on the part of the uninsured motorist but states just the opposite. In *Vidmar*, at 370, we held: "The purpose of uninsured motorists coverage is to compensate an insured who is the victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured." Such compensation would depend on being legally entitled to recover from the uninsured driver.

Plaintiff also relies on *Dakin v. Allis*, 25 Wis. 2d 49, 130 N.W.2d 191 (1964), for authority. That case, though, involved a release that included injury for future misconduct of the party and the agreement extended the covenant not to sue to such subsequent misconduct. In the instant case, the plaintiff released the right to the balance of uninsured motorist coverage based on a partial payment. Regarding the present case, the release did not violate public policy, whereas in *Dakin* a release purporting to cover future misconduct was found to violate public policy and therefore had no binding effect.

In *Sahloff v. Western Casualty & Surety Co.*, 45 Wis. 2d 60, 70, 171 N.W.2d 914, we stated: "We think it clear the action by an insured against his insurer under the uninsured motorist endorsement is an action on the policy and sounds in contract although in order to recover the insured *must prove* the negligence of an uninsured motorist." (Emphasis added.) That language does not hint a modification, extension or reversal of the requirement of establishing the negligence and resulting liability of the uninsured motorist. It is a statutory requirement that the uninsured driver be liable before uninsured coverage becomes due.

*Siegel*, 72 Wis. 2d at 528, again recognized the requirements of the statute as follows: "The statute directs that coverage be provided to the stated limits for 'bodily injury or death . . . for the protection of persons injured thereunder who are *legally entitled* to recover dam-

ages from owners or operators of uninsured motor vehicles because of bodily injury." (Emphasis added.)

We discussed bad faith in *Anderson v. Continental Ins. Co.*, 85 Wis. 2d at 685, and stated: "[I]n a case where a claim was not fairly debatable, refusal to pay would be bad faith and, under appropriate facts, could give rise to an action for tortious refusal to honor the claim." Also in *Anderson* we stated: "[B]ad faith conduct by one party to a contract toward another is a tort separate and apart from a breach of contract *per se* and it fails to emphasize the fact that separate damages may be recovered for the tort and for the contract breach." *Id.* at 686. Further, we stated: "We emphasize at this juncture only that the tort of bad faith is not a tortious breach of contract. It is a separate intentional wrong, which results from a breach of duty imposed as a consequence of the relationship established by contract." *Id.* at 687. Finally, we held: "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 691. Applying these tests for bad faith, we advised insurance companies that they "may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Id.* at 693. In the instant case, a reasonable insurer would have denied payment of the claim of the plaintiff for the entire uninsured motorist coverage under the circumstances. The claim of Elizabeth Radlein did not show she was legally entitled to the full proceeds of the uninsured motorist coverage since she never did prosecute the case sufficiently in order to establish uninsured motorist liability.

The plaintiff argues that it is necessary to develop a per se rule in the area of bad faith law for a failure to pay policy limits of uninsured motorist coverage, citing as authority California cases. The cases deal with bad faith and uninsured motorist coverage but that is their only relationship to the instant case. *Neal v. Farmers Ins. Exchange,* 148 Cal. Rptr. 389, 582 P.2d 980 (1978) involved an insurance company's attempt to offset uninsured motorist coverage of $15,000 by $5,000 of medical payments coverage of the same policy and a delay in any settlement offer. These facts are not related to the instant case with any relevancy and do not predict the future of plaintiff's theory of law.

*Gruenberg v. Aetna Insurance Company,* 108 Cal. Rptr. 480, 485, 510 P.2d 1032 (1973) held that when an insurance company "fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." That is already the law in Wisconsin. *See Anderson,* 85 Wis. 2d 675, 689. However, the *Gruenberg* case in no way represents a potential of law development in Wisconsin favoring plaintiff's theory of bad faith.

Finally, *Delos v. Farmers Ins. Group, Inc.,* 155 Cal. Rptr. 843, 93 Cal. App. 3d 642 (1979) involved a management association set up by an insurance company which designed a "guaranteed benefits" program combining high limits with medical payments and disability income coverage designed to induce policyholders to give up uninsured motorist coverage. Policyholders, upon solicitation from their company, had signed up for the guaranteed benefits program. The court found the group program was equivalent to a scheme to routinely deprive

its policyholders of uninsured motorist benefits, and held that the plaintiffs had an independent bad faith cause of action against the defendants. Plaintiff uses the *Delos* case as logic for this court to set aside the release signed by Mrs. Radlein in open court after being examined as to her state of mind by the judge, while being represented by an attorney, and the case not having reached the point that she had established that she was legally entitled to recovery from the uninsured motorist. There is no logical connection nor relevancy as to law development between the holding in *Delos* and the remedy sought in the instant case.

Plaintiff's attorney in this case was on notice from the notice of motion to dismiss that Industrial would be seeking reasonable attorney fees and costs pursuant to sec. 814.025, Stats. To defend against the motion the attorney had to show there either was a recognizable cause of action being pled or the cause of action should be accepted by the trial court as a development of the law in that it was a permissibly arguable extension, modification or reversal of existing law. The attorney was not able to persuade the trial court of his position nor of the claimed invalidity of the release previously executed by his client.

In *Sommer v. Carr,* 99 Wis. 2d 789, 799, 299 N.W.2d 856 (1981), this court pronounced an objective standard of liability which is to be applied in determining whether an attorney commenced a frivolous action under sec. 814.025, Stats. That objective standard was stated as follows: "whether the attorney knew or should have known the position taken was frivolous as determined by what a *reasonable attorney* would have known or should have known under the same or similar circumstances."

Then, in the case *In Matter of Estate of Bilsie,* 100 Wis. 2d 342, 350, 302 N.W.2d 508 (Ct. App. 1981), the court of appeals held:

"The statutory standard is sufficiently definite. It describes the continuing duty of every litigant and lawyer to determine whether the judicial system will be abused by a demand for or resistance to judicial relief. It assumes and requires an adequate investigation of the facts and law. It does not require the highest level of competence or legal ability. It embraces 'the objective standard of what would a reasonable attorney have done under the same or similar circumstances.' *Sommer v. Carr,* 99 Wis. 2d 789, 797, 299 N.W.2d 856, 860 (1981). Because it is only when *no* reasonable basis exists for a claim or defense that frivolousness exists, the statute resolves doubts in favor of the litigant or attorney."

Normally, this court would require a special and separate hearing before the trial court on the issue of frivolousness. At that hearing, legal arguments could be made or the attorney or litigant could call other persons or professionals to testify regarding their knowledge of the law and their opinions, well explained and documented as to the proposition of whether the rule of law relied on is either presently the rule or whether if the rule has never been considered, it is a probable and predictable extension, modification or calls for a permissible reversal of existing law. The trial court would then make the finding of frivolousness or lack of it applying the reasonable attorney standard.

In the instant case, however, an additional hearing in the trial court is not necessary nor required since the attorney was on notice to defend his position in the trial court, in the court of appeals, as well as in this court. There is no possibility that it could be reasonably argued that the rule of law is as relied on by the attorney, *i.e.,* the insurance company's duty was contractual and there-

fore required Mrs. Radlein to show no more to be entitled to payment than that her damages were obviously in excess of the policy limit of $15,000, even though her damages were not proven in court and there had been no determination that the uninsured motorist had a legal obligation to reimburse her. The plaintiff's theory is that if the insurance company did not pay over the policy limits under those circumstances, it would be found to have acted in bad faith and would therefore open up damages beyond compensatory to include emotional distress and additionally for punitive damages.

The plaintiff's attorney has had three opportunities to make his argument for his theory and has not succeeded at any level of judicial consideration. The rule of law requested is not available as an extension, modification or reversal of existing law. In fact, it is completely contrary to statutory law of sec. 632.32(4)(a), Stats., which requires an insured to pay under uninsured motorist coverage only when such injured person or claimant is *legally entitled* to recover damages from an uninsured motorist and that requires a burden of proving causal negligence and damages. The plaintiff's attorney did not take aim at a requested new rule of law but rather used a shotgun approach. No reasonable attorney, on the present state of the law, would reasonably argue for the change in the law sued for in this complaint. The arguments advanced by plaintiff's attorney at the motion to dismiss hearing in the trial court, in the court of appeals and in this court were unsound and totally without merit; they could not have been made in good faith, and the lawsuit was therefore frivolous. The trial court conducted a hearing as to reasonable attorney fees and costs in this case. The trial court found them to be $2,608.75 plus $120.69 disbursements.

"We have recognized that the trial court has the expertise and the opportunity to fully consider the matter of attorney fees. *Tesch v. Tesch,* 63 Wis. 2d 320, 334–35, 217 N.W.2d 647 (1974). . . . As part of its inherent supervisory power over the practice of law, this court may independently review the reasonableness of an attorney fee award. *Herro, McAndrews & Porter v. Gerhardt,* 62 Wis. 2d. 179, 184, 214 N.W.2d 401 (1974). . . ." *First Wisconsin Nat. Bank v. Nicolaou,* 113 Wis. 2d 524, 537, 335 NW.2d 390 (1983).

In this case, we decline to review the attorney fees awarded by the trial court as reasonable since on this review the plaintiff's attorney does not challenge the amount but only states they are "large."

We find that this appeal and petition for review are frivolous. We would not have accepted this petition except for the onus placed on an attorney when the trial court determines he did not act in good faith as a reasonable attorney would have under the same circumstances.

This court finds the action brought by plaintiff's attorney to have been frivolous and without any merit and therefore reasonable attorney fees and costs as found by the trial court are allowed.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

SHIRLEY S. ABRAHAMSON, J. (concurring in part, dissenting in part). Like the majority, I would affirm that part of the court of appeals decision affirming the circuit court's dismissal of the complaint. The circuit court's findings that on the basis of the record in this case the release executed by the plaintiff released any claim for bad faith should be upheld on appellate review.

Unlike the majority, however, I would also affirm the court of appeals decision remanding to the trial court the question of whether the claim was frivolous. Such a remand comports with our prior cases which provide that

the issue of frivolousness is determined by the trial court after a hearing. Furthermore, there are issues here worthy of consideration by the trial court in making its determination. I shall mention only two.

Even though the plaintiff's complaint was dismissed, the trial court should consider whether there is a reasonable basis in law for the plaintiff's claim that the signing of a release does not bar a subsequent suit for the tort of bad faith. Whenever an insurance company issues a check, even one for full policy limits, it generally demands a release and there may be a reasonable argument to be made that a release does not preclude a later bad faith claim.

In addition, while I agree with the majority that the insurance company's contractual liability to pay arises only if the person injured is legally entitled to recover damages from the owners or operators of the uninsured motor vehicle, I conclude that the trial court should consider whether there is a reasonable basis in the law for plaintiff's position that the "reduction clause" in the insurance policy violates the legislative policy embodied in secs. 631.43(1) and 632.32(4)(a), Stats. 1981–82. The reduction clause requires that the recovery under the uninsured motorist coverage be reduced by amounts paid by other sources jointly or severally liable with the owner or operator of the uninsured vehicle.

Plaintiff's position does call for an extension, modification, or reversal of existing law. In the *Drake, Leatherman, Scherr,* and *Nelson* cases (p. 623), this court held that "reduction clauses" in uninsured motorist provisions are valid and that a plaintiff's recovery from an insurance company must be reduced by the amount recovered from other sources. The plaintiff in this case argues that the *Drake, Leatherman, Scherr,* and *Nelson* cases are no longer good law.

The trial court might find that there is a reasonable basis in the law for the plaintiff's argument which would allow her to recover the $15,000 uninsured motorist coverage even if she recovered $15,000 from another source, so long as she did not recover an amount greater than her total damages.

*Drake, Leatherman, Scherr,* and *Nelson* were decided either before the uninsured motorist statute was adopted or under the old version of the statute. Furthermore, the court of appeals recently concluded in *Landvatter* (cited by the majority at p. 624 on a different point) that under the new insurance statutes the holdings in *Leatherman, Scherr,* and *Nelson* that a reduction clause does not contravene public policy are erroneous. In *Landvatter* the two sources under which recovery was sought were two policies both having uninsured motorist coverage. In this case the two sources under which recovery was sought were a policy providing uninsured motorist coverage and another source. It is reasonably arguable that *Landvatter* is applicable only to the fact situation in that case. On the other hand it is also arguable that the four old cases do not draw any distinction between the two fact situations and that the factual distinction is not significant. Moreover, arguably under the new statutes the legislature intended to prohibit an insurance company from reducing its liability under an uninsured motorist provision when the claimant has not fully recovered for the loss incurred.

Citing the old cases without any analysis of new developments in insurance law, the majority states that the plaintiff could not have recovered the full amount of her uninsured motorist coverage if she had recovered a judgment from another tortfeasor. It then concludes that the plaintiff's position was frivolous.

This court generally does not decide that a claim was frivolous but instead permits the trial court to give ade-

quate consideration to the issues involved. I see no reason to deviate from this practice in this case. I conclude that this court should remand this case to the trial court where a hearing may be held to determine whether the plaintiff's claim was without a reasonable basis in law and could not be supported by good faith argument for an extension, modification, or reversal of existing law.

For the reasons set forth I would affirm the decision of the court of appeals.